# SHEPARD v. BARRON.

APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR
THE SOUTHERN DISTRICT OF OHIO.

No. 217.·  Argued April 14, 15, 1904.—Decided May 31, 1904.

Where a public improvement is completed, and the assessment made at the
    instance and on the petition of the owners of the property, and pursuant,
    in form at least, to an act of the legislature of the State, and in strict
    compliance with its provisions, and with the petition there is an implied·
    contract that the parties, at whose request and for whose benefit the
    work was done, will pay for it in the manner provided for by the act,
    and after completion of the work they cannot set up the unconstitu-
    tionality of the act to avoid the assessment.
An assessment made under such circumstances does not deprive the owners
    of their property without due process of law nor take their property
    without just compensation.
There are circumstances under which a party who is illegally assessed may
    be held to have waived his remedy by conduct which renders it unjust
    and inequitable to others that he should be allowed to complain of the
    illegality.
An agreement that work for which their property is assessed was legally
    done and that the improvement was legally constructed, executed by
    property owners for the purpose of obtaining a market for the sale of
    bonds by the municipality to enable it to make the improvement in
    effect provides that the lien of the assessment to pay the bonds is
    valid, and they are estopped from asserting the unconstitutionality of
    the law under which the assessment is made.

This bill was filed in the Circuit Court of the United States
for the Southern District of Ohio, against the defendant, as
the treasurer of the county of Franklin, in the State of Ohio,
to enjoin him from taking any proceedings towards the collec-
tion of the balance of an assessment for a local improvement
upon land belonging to the appellants near the city of Colum-
bus, in the State of Ohio, because, among other grounds alleged
in the bill, the assessment to pay for the improvement as pro-
vided for in the act was to be made by the foot front and not in
proportion to the special benefit which might result from the
improvement to the property assessed, and on this ground it

was averred that the act violated the Fifth Amendment and also section 1 of the Fourteenth Amendment to the Federal Constitution. The bill was dismissed by the Circuit Court, and from the judgment of dismissal the plaintiffs have appealed directly to this court, because the law of Ohio referred to in the bill is claimed to be in contravention of the Federal Constitution. Act of 1891, sec. 5; 1 U. S. Comp. Stat. 549.

The original plaintiffs were partners doing business under the name of the Alum Creek Ice Company and as such were the owners of the land described in the bill, and soon after the commencement of this suit one of the plaintiffs sold out his interest in the property, including the land, and his grantees were substituted as plaintiffs in his stead and assumed his liabilities with regard to the land. Hereinafter they will all be described as the plaintiffs, as if they had all originally been parties to the suit, and had signed the papers and made the representations hereinafter mentioned.

The answer denied the averments of the bill and also set up facts which, as defendant insisted, precluded the plaintiffs from obtaining relief by injunction as prayed for in the bill.

Upon the trial it appeared that the plaintiffs and others were separate owners of distinct portions of a tract of land adjoining the city of Columbus, Ohio, and bounded by the Columbus and Granville turnpike road, which was a public highway leading to and from the city of Columbus. The tract had a frontage on the road of 9,615.38 feet, of which the plaintiffs owned 1,111 feet. On March 26, 1890, an act was passed by the Ohio legislature, 87 Ohio Laws, 113, which authorized the county commissioners in counties in which there were situate cities of the first grade of the second class to improve roads extending from such cities and other roads and streets in certain cases. The act provided for an assessment by the foot front on the adjoining land in order to pay the cost of the improvement. Immediately upon the passage of the act and on or about March 31, 1890, the owners of the tract, including the plaintiffs, who were owners of a part thereof, inaugurated proceedings

under the act and presented a petition to the county commissioners asking for the improvement of the road through their property, as provided for in the act. The petition has been lost, but the evidence shows it was signed in behalf of all the owners of the land (including the plaintiffs) fronting or abutting on that part of the road proposed to be improved. The persons who signed this petition and subsequently other papers, on behalf of plaintiffs, were duly authorized so to do. The petition was granted and the commissioners made an order to that effect, and for the execution of the work at an expense of $7.25 per front foot. On or about August 1, 1890, a contract was entered into for the construction of the improvement, and between that time and October 16, 1891, the improvement was completed. An assessment was, on October 15, 1891, laid upon the whole tract to pay for the cost of the improvement, which amounted to $11.25 per front foot, thus largely exceeding the amount originally contemplated as such cost. This cost was thus enhanced by reason of changes of plans regarding the improvement made from time to time as the work progressed, and which were assented to or asked for by the land owners, including the plaintiffs.

In order to pay the cash for the cost of this improvement bonds were issued and sold by the county commissioners as provided for in the act, amounting to $110,000, in two issues, the first of $50,000 and the second of $60,000.

The total amount of the assessment on the plaintiffs' land, assessed per front foot, as provided for in the act, was $12,812.61, which, as the plaintiffs insist, largely exceeded the special benefit arising from the improvement, and would result, if enforced to its full extent, in the confiscation of plaintiffs' property. The bonds not having been paid, an action was brought on them against the county commissioners in the Federal Circuit Court in Ohio, and judgment recovered by the bondholders, which was affirmed by the United States Circuit Court of Appeals, 119 Fed. Rep. 36, without, however, passing upon the validity of the assessment now before this

court (p. 48). The act under which the improvement is made is set forth in full in the above report.

After the plaintiffs had paid seven annual installments of the assessment, each installment amounting to $1,256.61, and the total being $8,810.27; there remained a balance due on the assessment of $4,002.34, and this bill was filed on June 12, 1899, for the purpose of enjoining the collection of the balance remaining unpaid on the assessment, on the grounds already stated.

Immediately after the contract for doing the work of improvement was entered into between the county commissioners and the contractor, and in compliance with the provisions of the act, (section 13,) the commissioners designated two of the owners of the abutting property, who, together with the county surveyor, were to constitute a board, which was authorized to elect a superintendent to see that the contract was performed according to its true intent, and that all orders of the county surveyor in furtherance thereof were obeyed. Mr. Shepard, one of the plaintiffs, was designated as a member of the board, and acted as such, with another land owner and the county surveyor, and elected a superintendent as provided for in the act.

Mr. Shepard was also frequently present during the progress of the work and knew of the alterations in the work as they were subsequently and from time to time made. He was familiar with the law under which the action of the county commissioners was invoked and knew that it provided for an assessment upon the abutting property by the front foot for the payment of the cost of the improvement.

During the progress of the work, and on June 29, 1891, the agent of the Columbus Land Association (one of the owners of a portion of the tract) made a written proposal to the commissioners in relation to the improvement in question, and agreed that the land association would secure and pay the entire expense in removing the earth upon the circle in East Broad street and in beautifying and adorning the circle, upon

the condition that the street around the circle should be completed and paved in accordance with the plat, order and contract mentioned. The plaintiffs, acting under the name of the Alum Creek Ice Company, together with the other owners of real estate abutting upon these improvements, addressed a written communication to the county commissioners in connection with the foregoing proposal of the land company, in which they spoke of the improvements "now being made under proceedings by and before this board of county commissioners of Franklin County," and in which they also said that they "hereby withdraw all objection to said improvement and the assessment of their said real estate therefor on condition that the foregoing agreement shall be kept by said Columbus Land Association." The offer of the company was accepted, and there is no claim made that the company did not fulfill the agreement.

On September 2, 1891, the owners of the tract (plaintiffs among them) petitioned the commissioners to cancel the contract, with the assent of the contractor, for sodding the sides of the improved roadways, and gave as a reason therefor that a number of the property owners had informed the contractor that they would rather have grass seed sown thereon. The petitioners concluded: "We therefore petition that you cancel the above-mentioned contract, and that each one, for their respective frontage upon said street, will see to it that grass seed is sown upon said sideways of East Broad street this fall, and take upon themselves the care and charge of the same." The contract was cancelled, as asked for, with the consent of the contractor.

There was also presented to the commissioners a communication signed by the owners of the land, including the plaintiffs, asking the commissioners to cause all bonds issued by them for the expense of the improvement to be made for a period of twenty years from the date thereof, "and if you can extend the time to twenty years for the bonds already sold the extension of the time at which they would mature would be

satisfactory to the undersigned, all of which we respectfully petition for."

There was also signed by the plaintiffs Shepard and McLeish, among others, as members of the board appointed under the act, (section 13,) a resolution, "That the board for the improvement of said street hereby respectfully requests the county commissioners to do all in their power to carry out the prayer of said petition," the petition being to the board of county commissioners to take steps to have the bonds for the improvement extended so as to run twenty years.

There was also signed by all the land owners, including the plaintiffs, a communication, which, on account of its recitals and statement, is set forth at length:

"Whereas, on the 31st day of March, 1890, a petition signed by the subscribers hereto was by us presented to the board of county commissioners of Franklin County, Ohio, praying for the improvement of the extension of East Broad street, in this county, beginning at the bridge across Alum Creek on said street and extending eastwardly therefrom to the Cassady road, which said portion of said street lies in Marion township, said county, which said improvement was in said petition prayed to be made under the provisions of an act of the general assembly of Ohio, entitled 'An act to authorize county commissioners in counties in which there are situated cities of the first grade of the second class, to improve roads extending from such cities, and other roads or streets in certain cases. Passed March 26, 1890.' Which said petition stated with what material said street should be paved and what provisions should be made for sidewalks, gutters and other passages for carrying off the water, and between what points said street was to be improved and the kind of material of a permanent character said petitioners desired used in said improvement; and whereas said petition was signed by all the persons owning property abutting upon the portion of said street in said petition asked to be improved, said petition stating the number of feet between the termini of said improvement;

"And whereas, such proceedings were had by said board of county commissioners on said petition and in accordance with said act of the general assembly that the prayer of said petition was granted and said improvement made in accordance with the prayer of said petition; and

"Whereas said original petition as well as other papers relating to said improvement have been lost or mislaid:

"Now, in consideration of said improvement and in order that the bonds to be issued to pay for said improvement may not lie under suspicion, or remain unsold by reason of the absence or loss of said original papers,

"We hereby agree that such petition hereinbefore recited was filed, signed by us as herein stated, and that we will not set up as a defence against any assessment upon our said property abutting upon said improvement for the payment of bonds issued on account thereof any informality arising from the absence or loss of any of said papers but agree that said improvement was legally made and constructed."

This paper was signed before the bonds, spoken of therein, were issued by the commissioners. It was required by the proposed purchasers of the bonds before they were taken and paid for. After the paper was signed the county commissioners thereupon issued the bonds and delivered them to the Ohio National Bank of Columbus, as agents for the purchasers.

After the improvements were completed the plaintiffs, in connection with other property owners, signed a petition to the county commissioners to lay sewer pipe, (a 15 and a 24-inch pipe,) and the petition provided: "The expense of said work to be assessed against the respective property on the street, the same as other expenses for making said improvement are levied and paid."

This is claimed to be a recognition of the assessment after the improvement had been made and after the land owners knew what it was, of their willingness to be still further assessed to effect a complete work.

Another paper, containing somewhat more in detail the

alleged facts regarding the improvement, and ending with the statement, "Said improvement has been and is now being legally made and constructed, and we hereby request that you execute and issue such further amount of bonds as shall be necessary to pay the cost of improvement," and purporting to be signed by the plaintiffs, among others, was offered (though it does not appear to have been received) in evidence. It was objected to by the plaintiffs on the ground that there was no proof that the paper had been signed by the plaintiffs, and that if the paper was a copy of another paper of similar import, the original was already in evidence. The record does not disclose what was the decision upon the objection thus made. The paper, it was stipulated between the parties, was a copy of the county commissioners' record of Franklin County, Ohio. A motion was also subsequently made to suppress this testimony, but no decision of the motion is disclosed by the record.

During the making of the improvement and for some time thereafter all parties assumed the act of 1890, under which the improvement was made, was constitutional.

The court below upon all the evidence held that it would consider but one matter of defence, that of estoppel, and held that it was sufficiently made out, and accordingly dismissed the bill.

*Mr. David F. Pugh* for appellants:

The assessment was illegal; it exceeded the value of the property. The front foot method of assessment is arbitrary and not according to benefits received. *Fay* v. *Springfield,* 94 Fed. Rep. 409; *Chamberlain* v. *Cleveland,* 34 Ohio St. 551, 567.

The statute under which the assessment was levied deprived the property owners of due process of law. There is no provision for notice. *Charles* v. *City of Marion,* 98 Fed. Rep. 166; *County of San Mateo* v. *Southern Pacific,* 13 Fed. Rep. 722.

This case is controlled by *Norwood* v. *Baker*, 172 U. S. 269; and see cases cited in that opinion. *Agens* v. *Mayor,* 37 N. J. L. 416; *Bogert* v. *Elizabeth*, 27 N. J. Eq. 568; *Hammett* v. *Philadelphia*, 65 Pa. St. 146; *Barns* v. *Dyer,* 56 Vermont, 469.

*Norwood* v. *Baker* was not reversed by *French* v. *Barber Asphalt Co.*, 181 U. S. 324, or any of the other cases simultaneously decided. The market value as proved showed that the property was not benefited by the assessment. *Chicago Traction Co.* v. *Chicago*, 68 N. E. Rep. 513.

There is no merit in appellee's claim that appellants were estopped. Either fraud or its equivalent must be proved in order to make the principles of estoppel available in this case. *Bank* v. *Morgan*, 117 U. S. 108; *Henshaw* v. *Bissel*, 18 Wall. 271. And see also *Lyon* v. *Tonawanda*, 98 Fed. Rep. 361; *O'Brien* v. *Wheelock*, 95 Fed. Rep. 883. The signing of the petition is not an estoppel. *Birdseye* v. *Clyde*, 61 Ohio St. 27. The highest court of the State has declared the act unconstitutional. *Bennignus* v. *County Treasurer*, 62 Ohio St. 666. The petitioners did not get what they petitioned for, so estoppel does not apply. They were only bound up to the constitutional limit of assessment and that has been exceeded by payments already made. See *Walsh* v. *Barron*, 61 Ohio St. 15; *Storer* v. *Cincinnati*, 4 C. C. 278; *S. C.*, affirmed 24 Wkly. L. Bull. 371. Appellee's claim that appellants are guilty of laches is not good. *Brown* v. *Sutton*, 129 U. S. 238; *Hammond* v. *Hopkins*, 143 U. S. 224. They were not obliged to sue until efforts were made to collect the assessment. *Columbus* v. *Angler*, 44 Ohio St. 485; *Lewis* v. *Taylor,* 61 Ohio St. 471; *Cincinnati* v. *James*, 55 Ohio St. 180. Estoppel is a question of general law. This court can so decide it by independent judgment. *Olcott* v. *Supervisors,* 16 Wall. 678.

That the appellants purchased property subject to assessment does not estop them. *Lewis* v. *Taylor, supra; State* v. *Jersey City*, 35 N. J. L. 381. No personal obligation rested upon the owners to pay the assessment under the statute.

*Dreake* v. *Beasley,* 26 Ohio St. 315. And the agreement of the grantee does not create an obligation. *Brewer* v. *Maurrier,* 38 Ohio St. 550; *Crowell* v. *Hospital,* 27 N. J. Eq. 656, cited in *Keller* v. *Ashford,* 133 U. S. 610.

Cases on appellee's brief can be distinguished and are not applicable to the case at bar.

*Mr. Henry A. Williams* and *Mr. Augustus T. Seymour* for appellee:

The foot front method of assessment for local surface improvement of streets is not necessarily contrary to the Federal Constitution. *Cass Farm Co.* v. *Detroit,* 181 U. S. 396, 397; *Tonawanda* v. *Lyon,* 181 U. S. 389; *Detroit* v. *Parker,* 181 U. S. 399; *Schumate* v. *Heman,* 181 U. S. 402; *French* v. *Barber Asphalt Paving Co.,* 181 U. S. 325; *Webster* v. *Fargo,* 181 U. S. 623; *Paulsen* v. *Portland,* 149 U. S. 30; *Fallbrook Irrigation Dist.* v. *Bradley,* 164 U. S. 112; *Bauman* v. *Ross,* 167 U. S. 548; *Parsons* v. *Dist. of Columbia,* 170 U. S. 45.

Foot front method of assessing the cost of local improvements upon abutting property has been uniformly sustained by the Supreme Court of Ohio. *Ernst* v. *Kunkle,* 5 Ohio St. 521; *Northern Indiana R. R. Co.* v. *Connelly,* 10 Ohio St. 160; *Hill* v. *Higdon,* 5 Ohio St. 246; *Upington* v. *Oviat,* 24 Ohio St. 232; *Wilder* v. *Cincinnati,* 26 Ohio St. 284; *Cincinnati* v. *Oliver,* 31 Ohio St. 371; *Jaeger* v. *Burr,* 36 Ohio St. 371; *Haviland* v. *Columbus,* 50 Ohio St. 471; *Parsons* v. *Columbus,* 50 Ohio St. 460; *Sandrock* v. *Columbus,* 51 Ohio St. 317; *Findlay* v. *Frey,* 51 Ohio St. 390; *Schroeder* v. *Overman,* 61 Ohio St. 1; *Walsh* v. *Sims,* 65 Ohio St. 211; *Shoemaker* v. *Cincinnati,* 68 Ohio St. 603.

The statute is not subject to the objection that due process of law is denied by its provisions for want of notice to property owners before the levy of the assessment therein provided for. *Hager* v. *Reclamation Dist.,* 111 U. S. 701; *Hurtado* v. *California,* 110 U. S. 516; *Turpin* v. *Lemon,* 187 U. S. 51.

A party who might otherwise complain, may waive constitutional provisions enacted for his protection. *State* v. *Mitchell,* 31 Ohio St. 592; *Tone* v. *Columbus,* 39 Ohio St. 281; *Columbus* v. *Sohl,* 44 Ohio St. 479; *Columbus* v. *Slyh,* 44 Ohio St. 484; *Corry* v. *Gaynor,* 22 Ohio St. 584; *Treasurer* v. *Martin,* 50 Ohio St. 197; *Mott* v. *Hubbard,* 59 Ohio St. 199.

The Ohio decisions are consistent with the holdings of this court. *Daniels* v. *Tearney,* 102 U. S. 415; *Pierce* v. *Railway Co.,* 171 U. S. 641; *Wight* v. *Davidson,* 181 U. S. 371; *O'Brien* v. *Wheelock,* 184 U. S. 450.

The constitutionality of statutes similar to the one in question was uniformly upheld prior to the enactment of this law. *State ex rel. Hibbs* v. *Commissioners,* 35 Ohio St. 458.

Since its enactment, such statutes have been declared unconstitutional, because of their lack of uniformity of operation. *Hixson* v. *Burson,* 54 Ohio St. 470; *State ex rel.* v. *Davis,* 55 Ohio St. 15; *Mott* v. *Hubbard,* 59 Ohio St. 199.

The doctrine of the waiver of constitutional protection has become a rule of property in Ohio, and not presenting a Federal question is as binding upon the United States courts as if it were a part of the statute. *Lippincott* v. *Mitchell,* 94 U. S. 767; *Leffingwell* v. *Warren,* 2 Black, 599; *Olcott* v. *Bynum,* 17 Wall. 44; *Burgess* v. *Seligman,* 107 U. S. 20; *Electric Company* v. *Dow,* 166 U. S. 409; *Beaupré* v. *Noyes,* 138 U. S. 397; *Israel* v. *Arthur,* 152 U. S. 355; *Marrow* v. *Brinkley,* 129 U. S. 178; *Adams* v. *Burlington & U. R. R. Co.,* 112 U. S. 123; *Schaefer* v. *Werling,* 188 U. S. 516; *Gillis* v. *Stinchfield,* 159 U. S. 658; *Beals* v. *Cone,* 188 U. S. 184.

Two of appellants were estopped by reason of their assuming and agreeing to pay the assessment in a deed of conveyance accepted by them after the improvement was completed. *Thompson* v. *Thompson,* 4 Ohio St. 333; *Cramer* v. *Lepper,* 26 Ohio St. 59; *Freeman* v. *Auld,* 44 N. Y. 50; *Crawford* v. *Edwards,* 36 Michigan, 355; *Caldwell* v. *Columbus,* 56 Ohio St. 759; *Welsh* v. *Sims, Treas.,* 65 Ohio St. 211; *Keller* v. *Ashford,* 133 U. S. 610.

MR. JUSTICE PECKHAM, after making the above statement of facts, delivered the opinion of the court.

Both parties in this case seem to agree that the statute of 1890, under which these proceedings were taken, is void as in violation of the state constitution. As authority for that proposition the case of *Hixson* v. *Burson*, 54 Ohio St. 470, is cited. The case holds that a statute of a nature similar to the one under consideration violated the provision of the Ohio constitution, because, while its subject matter was general, its operation and effect were local, thus violating the provisions of section 26 of article 2 of the constitution of that State, which provides that " All laws of a general nature shall have a uniform operation throughout the State." The act under consideration in the case at bar seems to come within the principle of the above case.

The invalidity of the act as in violation of the state constitution has also been recognized by the Circuit Court of Appeals in the Sixth Circuit, in the case of *Board of Commissioners* v. *Gardiner Savings Institution*, 119 Fed. Rep. 36.

The bonds were held in that case to be valid obligations of the county, notwithstanding the unconstitutionality of the act under which they were issued, because at the time of their issue, which was before the decision in *Hixson* v. *Burson*, the Supreme Court of Ohio had held in *State* v. *Board of Franklin County Commissioners*, 35 Ohio St. 458, that an act which was in all respects similar in its nature to the one under consideration was constitutional and valid, and the Circuit Court of Appeals, therefore, held that under those circumstances the law as it had been declared at the time when the bonds were issued was the law applicable to them.

But the plaintiffs also insist that the act is void as a violation of the Fifth and Fourteenth Amendments to the Federal Constitution. The assessment per foot front, it is contended, leads in this case to a confiscation of the property of the plaintiffs, and is not based upon the fact of benefits received, and

it results in taking the property of plaintiffs without due process of law.

Before coming to the consideration of the validity of these objections to the statute the defendant insists that by virtue of the facts already detailed in the foregoing statement the plaintiffs are not in a position to raise the question. We regard this objection as well taken.

The facts upon which the defence rests are above set forth at length, not including the paper, which does not appear to have been received in evidence. A defence of this nature and upon these facts need not be placed entirely upon the strict and technical principles of an estoppel. While it partakes very strongly of that character, it also assumes the nature of a contract, implied from the facts, by which the party obtaining the benefit of the work agrees to pay for it in the manner provided in the statute under which it is done, even though the statute turn out to be unconstitutional. It does not in the least matter what we may call the defence, whether it be estoppel or implied contract, or one partaking of the nature of both, the result arrived at being that the plaintiffs are told that under all the facts proved in the case they cannot set up the unconstitutionality of the act or that they are bound by their contract to pay the assessment. Where, as in this case, the work is done and the assessment made at the instance and request of the plaintiffs and the other owners, and pursuant to an act (in form, at least) of the legislature of the State, and in strict compliance with its provisions and with the petition of the land owners, there is an implied contract arising from such facts that the party at whose request and for whose benefit the work has been done will pay for it in the manner provided for by the act under which the work was done.

In this case the manner of payment was, as provided for in the act, by an assessment upon the land by the foot front. The money thus collected would form a fund to be used to pay the bonds which were to be issued in accordance with the act by the county commissioners acting for the county. The

county thus became the debtor for a debt which was incurred entirely for the benefit and at the request of the owners of the land. Under such facts the county has the right to look at the assessment upon the land as the fund out of which to pay the bonds. In this view the constant and frequent promises and representations made by the plaintiffs after the work was embarked upon are material evidence of the implied contract to pay for the work arising from the request for its performance. It is, therefore, upon these facts, immaterial that the law under which the proceedings were conducted was unconstitutional, because the work was done at the special request of the owners, under the provisions of the act and upon a contract, both implied and in substance expressed, that the bonds would be paid and the assessment to be imposed for the raising of a fund to pay them would be legal and proper.

Although the land owners have been greatly disappointed in the results of the improvement and the affair has proved somewhat disastrous, yet they have obtained just such an improvement as they asked for and expected, and they are the ones to bear the disappointment and loss.

It is true this action is not between the bondholders and the owners of the land. The representations and agreement of the land owners were, however, made for the purpose of obtaining a market for the sale of the bonds, and, in order that there should not be any suspicion of their invalidity, the land owners agreed that the work was legally done and the improvement legally constructed. The representation and agreement were, in fact, directed to all who might be interested in the matter, including the county commissioners, who were to issue the bonds as representatives of the county. The effect was to provide, in substance, that the lien of the assessment should be valid and the assessment should create a fund for the payment of the bonds. The defendant, representing the county, must be permitted to take advantage of the representations and agreement of the land owners, as the county has a direct interest in sustaining the validity of the assessment, and the representa-

tions were made, among others, to the county commissioners, who represented the county in issuing the bonds and in doing the work.

On principles of general law, we are satisfied that the plaintiffs are not in a position to assert the unconstitutionality of the act under which they petitioned that proceedings should be taken and that the assessment should be made in accordance with those provisions. This principle has been recognized in Ohio many times. See *State* v. *Mitchell*, 31 Ohio St. 592, 609; *Tone* v. *Columbus*, 39 Ohio St. 281, 296; *City of Columbus* v. *Sohl*, 44 Ohio St. 479, 481; *City of Columbus* v. *Slyh*, 44 Ohio St. 484; *Mott* v. *Hubbard*, 59 Ohio St. 199, 211.

In *Wight* v. *Davidson*, 181 U. S. 371, this court, while not positively deciding the proposition, yet strongly intimated, (p. 377,) that by reason of the acts of the appellees they were not in a position to question the validity of the statute there under consideration, but as there were others than the appellees concerned, and a decision of the Court of Appeals had declared the act void as to the appellees, it was thought better to pass by the question whether they were estopped by having made the dedication provided for in the act, and to decide the question of the constitutionality of the act of Congress under which the proceedings were had. The act was held to be valid.

Under some circumstances a party who is illegally assessed may be held to have waived all right to a remedy by a course of conduct which renders it unjust and inequitable to others that he should be allowed to complain of the illegality. Such a case would exist if one should ask for and encourage the levy of the tax of which he subsequently complains; and some of the cases go so far in the direction of holding that a mere failure to give notice of objections to one who, with the knowledge of the person taxed, as contractor or otherwise, is expending money in reliance upon payment from the taxes, may have the same effect. Cooley on Taxation, p. 573, and cases cited in note 5; *Tagh* v. *Adams*, 10 Cush. 252; *Bidwell* v. *City of Pittsburg*, 85 Pa. St. 412; *Shutte* v. *Thompson*, 15 Wall. 151.

Provisions of a constitutional nature, intended for the protection of the property owner, may be waived by him, not only by an instrument in writing, upon a good consideration, signed by him, but also by a course of conduct which shows an intention to waive such provision, and where it would be unjust to others to permit it to be set up. Certainly when action of this nature has been induced at the request and upon the instigation of an individual, he ought not to be thereafter permitted, upon general principles of justice and equity, to claim that the action which he has himself instigated and asked for, and which has been taken upon the faith of his request, should be held invalid and the expense thereof, which he ought to pay, transferred to a third person.

Plaintiffs argue that, although the work was to be done under the provisions of the act of 1890, yet they had the right to assume that the assessment to be imposed for the payment of the bonds would be what they term a valid assessment; or, in other words, would be made as they insist, not upon the foot front, (as provided for in the act,) but according to the actual benefit received from the improvement, and they cite *Birdseye* v. *Village of Clyde*, 61 Ohio St. 27, as authority for the proposition.

In that case it was held that the land owner was not estopped to object to the assessment because he had acquiesced in the construction of the improvement and had petitioned therefor, and thereby consented to the raising of a certain proportion of its cost by an assessment on all abutting property. There was, however, a statute which provided that no assessment should be made on any lot or land for an improvement in excess of twenty-five per cent of the value of the property as assessed for taxation. Although the plaintiff had petitioned for the improvement, it was held that he was not on that account estopped from objecting to any assessment which was over twenty-five per cent of the value of the property. It was not to be assumed that the plaintiff waived the benefit of the general statute because he asked for the work. The case has

no application, as we think, to the one before us. Certainly in the *Birdseye* case the plaintiff had a right to assume, notwithstanding his petition that the work should be done, that the assessment on his land should not be greater than the law provided for. But in the case at bar the petition asked for the doing of the work under the very statute which in terms provided that the assessment should be made by the foot front, exactly as in fact it was made, and in making such assessment the commissioners but complied with the request of the petitioners.

The plaintiffs have referred to *O'Brien* v. *Wheelock,* 184 U. S. 450, as the chief authority to support their contentions as to estoppel. In that case, while the estoppel contended for was denied, yet, (at page 491,) it is stated, in the opinion of the court, which was delivered by the Chief Justice, that: "The result is not inconsistent with the cases that hold that, although a law is found to be unconstitutional, a party who has received the full benefit under it may be compelled to pay for that benefit according to the terms of the law. This is upon the theory of an implied contract, the terms of which may be sought in the invalid law and which arises when the full consideration has been received by the party against whom the contract is sought to be enforced."

In the case at bar it is seen that the plaintiffs did in fact receive the full consideration for the contract. They obtained the improvement asked for, so far as the doing of the work was concerned, although the results arising therefrom were a great disappointment to them.

Looking at the facts in the case cited, they show that the scheme proposed and under which the proceedings were taken was of large proportions, and consisted of a plan to redeem from overflow by the Mississippi River a large amount of land, from three to five miles in width, extending along the river for more than fifty miles, containing over one hundred thousand acres, lying in portions of three different counties, varying greatly in condition and value, and owned severally by a great

number of people. The work was to be done by building levees and digging drains and ditches, and doing other work by which to drain the land and render it valuable for agricultural purposes. Certain of the land owners had at all times opposed the proceedings instituted to assess their land. The permanent success of the scheme rested in the character of the work and in its maintenance by compulsory process after it had been constructed in its various branches. The case is one seldom equalled in respect to the size of the tract to be reclaimed at the expense of the land owners, the numbers interested as such owners, and the immense expense of the work. The first requisite was a valid act of the legislature authorizing the work and providing a means for its accomplishment. To that end the act of 1871 was passed. The history of the proceeding thereafter is given, commencing at page 457 of the report in 184 U. S., but it is entirely too long to be referred to here in detail. It is enough to say that, after perusing it, there will be found great difficulty in perceiving even a slight analogy to the case before us. The facts cannot be summarized. They must be appreciated in all their fullness and detail, and when thus examined the result arrived at will, as we think, seem inevitable. The case was *sui generis*.

The one great purpose was, not alone to build, but to maintain a work which in its nature would require constant supervision and repair. Unless the work could be maintained by compulsion when necessary, it plainly would have appeared at the very beginning to involve an idle waste of money. It could not be maintained unless the act upon which the whole scheme rested was valid, and could from time to time and always be enforced. But that act was held to be unconstitutional long before the work was completed, and the land owners, on account of the inability to compel either the completion or the maintenance of the work, were unable to receive the benefit which it had been supposed would accrue under the act thus declared illegal. The work never was

fully and in all things completed, while the credit of the bonds, which were issued to the contractors for doing the work and sold by them; was maintained by reference simply to the law under which they were issued and upon the opinion of counsel as to its validity.

It also appears that the land owners never gave any assurances to the contractors for the work or to those who purchased the bonds after they were delivered to the contractors, regarding their validity or value, but they supposed if the work were done it could and would be kept up under the sanction of the law which provided for it.

Upon the facts as detailed in the report the court held that there was nothing in the general principles of implied contract which would prevent the land owners from resisting the enforcement of the lien of the bonds upon the land.

In contrast with these facts it is seen that in the case at bar the plaintiffs and other land owners have received full consideration for their promise, and have obtained precisely what they asked for and in the manner they asked it. We have also the written petition for the improvement, an active participation of the plaintiffs in carrying it out under the act, the frequent statements on their part and upon the part of the other land owners of the validity of the work and the regularity of the assessment to be made under the terms of the act, and the specific statement, made for the purpose of inducing the issuing of the bonds and their purchase by the individuals who took them, that practically the work had been done properly and there was no defence to the bonds. This is equivalent to saying the assessment to be laid as requested, under the act of 1890, would be valid and no defence interposed to its collection. The differences of fact in the two cases show that the *O'Brien* case furnishes no authority for the plaintiffs herein. We concur in the remarks of the District Judge in this case, when he said that: "The complainants invoked the action of the county commissioners to enhance the value of their land; they actively promoted the improvement, knowing that its

cost must be paid by a front foot assessment on their property; they recognized the justice of the assessment from time to time during the progress of the work, and afterwards by paying annual installments of the assessment for seven years and until they were tempted by the decision of the Supreme Court, in *Baker* v. *Norwood,* to cast their burden upon the general public, and it is now too late to complain of the method of the assessment or of the lack of the special benefits which were dissipated by the collapse of the 'boom.'"

We do not consider the validity of the contention on the part of the plaintiffs, that the act or the assessment in furtherance of its provisions violates in any particular the Federal Constitution. For the reason given above we are of opinion the judgment is right, and it is

*Affirmed.*