## ENGLISH *v.* TERRITORY OF ARIZONA *ex rel.* GRIFFITH, TREASURER OF PIMA COUNTY.

### APPEAL FROM THE SUPREME COURT OF THE TERRITORY OF ARIZONA.

No. 180.  Submitted April 26, 1909.—Decided June 1, 1909.

Where there is doubt as to the construction of a statute of a Territory this court leans towards the construction given by the Supreme Court of the Territory, *Copper Queen Mining Co.* v. *Arizona Board*, 206 U. S. 474, and unless there is manifest error this court will not disturb a decision of that court, *Fox* v. *Haarstick*, 156 U. S. 674, and in this case this court accepts the decision of the Supreme Court of Arizona in construing a revenue statute of that Territory.

The question of special benefit of assessment work and property to which it extends is one of fact. *Stanley* v. *Supervisors*, 121 U. S. 535, 550.

Property owners who have been duly notified of the meeting of commissioners in regard to a public improvement and assessment therefor are bound to take notice of the subsequent presentation in conformity with law of the report of such commissioners. *Lander* v. *Mercantile National Bank*, 186 U. S. 458.

One who promotes an improvement and appears before the commission to protest against the amount of the assessment on his property is precluded from attacking the legality of the assessment on the ground that he had no notice. *Wight* v. *Davidson*, 181 U. S. 371.

THE facts are stated in the opinion.

*Mr. James Reilly, Mr. A. C. Baker* and *Mr. Marcus A. Smith* for appellants.

*Mr. Samuel L. Kingan* for appellee.

MR. JUSTICE McKENNA delivered the opinion of the court.

This suit was brought in the District Court of Pima County, Arizona, by the Territory of Arizona to collect a delinquent special assessment levied by the city of Tucson on the property of appellants for the payment of the improvement of Congress street in that city. The assessment was levied under the provision of chapter 2 of title 11 of the Revised Statutes of the Territory. The Territory obtained judgment for the amount of the assessment, $12,533.75, which was affirmed by the Supreme Court of the Territory.

The contentions that appellants made in the Supreme Court of the Territory as far as appears from its opinion were; (1) That the Territory, at the relation of the treasurer and *ex officio* tax collector of Pima County, had no right to bring this suit, but that such right was in the city tax collector. (2) (a) That the assessment was erroneous because the cost of the improvement was divided "by the arbitrary front foot rule," and that the assessment was made upon that basis and not upon the basis of benefits derived from such improvement; (b) the committee appointed under the act to make the assessment took into consideration the value to appellants of a certain narrow strip of land lying between the lot of appellants and Congress street, left open and unoccupied in the widening and improvement of the street. (3) That the appellants had no notice, actual or constructive, when the common council would act upon the report of the committee. (4) That the property was not subject to special assessment because appellants' property was not contiguous to the improvement made. The Supreme Court of the Territory decided all of the contentions against appellants, the last one on the ground that the complaint alleged that appellants' property was contiguous to the im-

provement, which allegation was not denied by the answer. That contention, therefore, we may take no further notice of.

The first contention is repeated here, and it invokes our construction of the statutes of the Territory against that made by the Supreme Court. If there were doubt we should certainly lean to the construction given by the Supreme Court. *Copper Queen Mining Co.* v. *Arizona Board*, 206 U. S. 474, 479. But we think there is no doubt. There is no dispute as to the proceedings taken, so far as they could vest authority in the relator Bogan as county tax collector to bring this suit. The dispute turns upon the law. Paragraph 483 of the Revised Statutes of the Territory as amended in 1897 provides that "it shall be the duty of the collector of special assessments, within such time as the common council may provide, but in no event later than the 21st of December of the year in which such assessment was made, to make a report in writing to the general officer of the county authorized by the general revenue law to sell for taxes due the county and Territory, of all the lands, town lots and real property upon which he shall be unable to collect special assessments, with the amount due of special assessments and unpaid thereon, together with his warrant or a brief description of the nature of the warrant received by him authorizing the collection thereof; . . . that he is unable to collect the same or any part thereof, and that he has given notice required by law that said warrants have been received by him for collection." It is further provided that the report when made shall be *prima facie* evidence that all of the forms and requirements of the law have been complied with, and that the special assessments mentioned in the report are due and unpaid. "And in any action before any court, wherein the question of the validity of such assessment is an issue, no defense or objection shall be made or heard which might have been interposed in the proceedings for the making of such assessment or the application for the confirmation thereof." It is provided in the next section that the county collector shall incorporate said list with the county

delinquent list, and "shall sell such delinquent city property at the same time and in the same manner for such city delinquent special assessment as real property is required to be sold by law for county and Territorial delinquent taxes." The Supreme Court said that "this section construed alone might well be considered as excluding any other method of collecting delinquent special assessments." But the court further said that paragraph 488 should be considered. That paragraph reads as follows:

"The general revenue laws of this Territory in reference to proceedings for the collection of delinquent taxes on real property, the sale thereof, the execution of certificates of sale and deeds thereon, the force and effect of such deeds and sales; and all other laws in relation to the enforcement and collection of delinquent taxes and redemption of tax sales, except as herein otherwise provided, shall be applicable to proceedings to collect such special assessments."

The court pointed out that the Act 92 of the Laws of 1903 repealed the general revenue law of the Territory in reference to proceedings for the collection of delinquent taxes, and substituted for a sale of the property by the tax collector a suit by that officer in the name and for the use of the Territory. The court said: "Unless, therefore, the act of 1903 applies to delinquent special assessments there would be no method provided by the existing statutes for the sale of delinquent city property for delinquent special assessments." And the court concluded that §§ 84 and 96 of the Acts of 1903 make "the method of collecting delinquent taxes provided for in the act applicable to all delinquent taxes which may appear on the roll." Section 84 provides:

"Within sixty days after the taking effect of this chapter, and every year thereafter, within thirty days after the settlement of the tax collector, the several clerks of the county boards of supervisors in each county in this Territory shall make in a book to be called the 'back tax book' a correct list in numerical order of all tracts of land and town lots on which

back taxes shall be due in such county, city or town, setting forth opposite each tract of land or town lot the name of the owner," etc.

Section 96 reads as follows:

"All back taxes, of whatever kind, appearing due upon delinquent real estate shall be extended in the 'back tax book' made under the chapter and collected by the tax collector under authority of this chapter."

Appellants contest the construction made by the Supreme Court of the Territory, but we have said that, unless in a case of manifest error, this court will not disturb a decision of the Supreme Court of a Territory construing a local statute. *Fox* v. *Haarstick,* 156 U. S. 674, 679. There is certainly not manifest error in the ruling in the present case. Indeed, we see no reason to doubt its correctness.

Of the second contention of appellants, that the assessment was made according to the "arbitrary front foot rule," and not upon the basis of benefits derived from the improvement, the Supreme Court said that even if the record showed that the committee in the respects named had improperly assessed the property, that appellants, not having followed the remedy given by the statutes for a revision of the assessments, were precluded from complaint, citing *Stanley* v. *Supervisors,* 121 U. S. 550.

But be this as it may, it was certainly decided in *Stanley* v. *Supervisors* that the question of special benefit and the property to which it extends is of necessity a question of fact, and the Supreme Court found that the commissioners appointed examined the locality of the improvement, ascertained to what extent the public would be benefited and to what extent there would be benefits to property, and found also the amounts that the property would be benefited, "apportioned and assessed such amounts so found to be a benefit to the property upon the several lots, plots, tracts and parcels of land, in the proportion of which they were severally benefited by such improvements." It was further found that no lot was assessed for a greater amount than it was actually

benefited. It may be that it is an answer to appellants' contention, and counsel recognize that it may be an answer, that appellants did not avail themselves of the remedy afforded by the law, that is, did not appeal from the order of the city council confirming the assessment. The finding of the court, however, is undoubtedly an answer to the contention if the commissioners were legally appointed. Of this there is a diversity of views between appellants and appellee, the appellants contending that paragraph 471 (§ 7) of the Revised Statutes of the Territory controls. It provides that the common council shall appoint three of its members, or any three competent persons, to "make examinations of the premises to be affected and make an assessment of the improvements contemplated." The appellee contends that paragraph 471 is not applicable, but that paragraph 467 controls. By that paragraph, when the improvements contemplated "require the taking or damaging of property, the proceedings for making just compensation therefor shall be the same as provided in title 21" of the Revised Statutes. Such proceedings were taken and in course of them the court appointed commissioners who, we have seen, examined the locality of the improvements and assessed the amount due from the property benefited. That this was the legal course to pursue was the view of the officers concerned with the administration of the law, including the court in which the proceedings for condemnation of the property were conducted, and, it may be inferred, was also the view of the Supreme Court of the Territory. The statute will bear that construction, and even if plausible objections can be urged against it, under the authorities which we have cited, we would not be justified in pronouncing it incorrect.

It is assigned as error that the trial court erred in not finding that no notice was given of the meetings of the common council upon the confirmation proceedings. The statute does not provide for notice of the meeting of the common council. It does provide for a notice of the meeting of the commissioners, and this notice was given, and it is found by the Su-

preme Court that Allen H. English appeared, through his attorney or agent, and made a formal protest against his assessment, but did not produce any witnesses nor did he specify any ground of objection. The law charged appellants with notice that the report would be presented to the common council and the report was actually filed with the common council a few days after the hearing. We think they were bound to take notice of this action. *Lander* v. *Mercantile National Bank*, 186 U. S. 458. See *Weyerhaueser* v. *Minnesota*, 176 U. S. 550. The record shows besides that English was a promoter of the improvement. It is true that he appeared before the commissioners and protested against his assessment, but he not only gave no reason for the protest, but his attorney expressly stated that the "protest was made for the sole purpose of saving the question of review," and that he "did not wish to intimate that he had any objection, but wanted to save his right in case he should have any." And it is found by the court that he knew of the enactment of the ordinance providing for the collection of the assessments and the issuing of bonds to pay for the improvement, that he interested himself in the sale of the bonds, and assisted in disposing of the same. There is, therefore, ground for the contention that such conduct constituted a waiver of all objections to the assessments. It certainly precludes him from saying that he had no notice of the proceedings before the common council. *Wight* v. *Davidson*, 181 U. S. 371.

Appellants pleaded that there was another action pending for the collection of the assessment against them, brought by the city of Tucson, and though conceding that the pleas were defective, urge that they were sufficient to put the court upon notice that the pending suit was not brought by the real party in interest, and that such party was the city of Tucson. The contention, however, is but a phase of the question that the general revenue law of the Territory was not repealed. There are other contentions, but they are without substantial merit.

*Judgment affirmed.*