ADAMS v. OSLEY et al.

(District Court, N. D. Georgia, E. D. January 9, 1919.)

No. 37.

1. BANKRUPTCY ⬢⟹303(3)—CONVEYANCES TO WIFE THROUGH SON—SUFFICIENCY OF EVIDENCE.

Bankrupt's conveyances to wife through son *held* fraudulent under evidence in his trustee's suit to cancel them.

2. APPEAL AND ERROR ⬢⟹1044—MASTER'S REPORT—EXCEPTIONS—IMMATERIALITY.

Exceptions to master's report, going to his ruling as to burden of proof on defendants, and as to effect of certain evidence, are immaterial, where evidence absolutely required master to hold, as he did, adversely to defendants.

In Equity. Petition for cancellation of conveyances by A. C. Adams, trustee in bankruptcy, against Patrick Osley and others. On defendants' exceptions to the master's report for petitioner. Exceptions overruled, and report confirmed.

Scott Berryman, of Bowman, Ga., and Horace & Frank Holden, of Athens, Ga., for plaintiff.

Stephen C. Upson, of Athens, Ga., for defendants.

⬢⟹For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Equitable Petition for Cancellation of Certain Conveyances.

NEWMAN, District Judge. This case was referred to Austin Bell, Esq., as special master, and his report is as follows:

"I, the undersigned, to whom as special master the issues in the above matter were referred, to ascertain and report the facts, respectfully report as follows:

"That said issues were brought on for hearing, and I was attended upon said hearing by counsel for the plaintiff and counsel for the defendants, and that testimony was adduced in said matter, the stenographic minutes of which are herewith filed.

"This is a case brought by A. C. Adams, trustee of J. J. Osley, a bankrupt. The plaintiff by his petition seeks to cancel certain deeds and transfers of bond for title, to wit:

"Deed from J. J. Osley to Patrick Osley, bearing date of December 8, 1913, to 31½ acres of land, consideration $3,500, recorded February 12, 1917, in the clerk's office of Hart county, Georgia.

"Deed from Patrick Osley to Mrs. Emma Osley, bearing date of December 19, 1913, reciting a consideration of $3,500, describing the same land, recorded February 12, 1917, in the clerk's office of Hart county, Georgia.

"Transfer by J. J. Osley to Patrick Osley of a bond for title from C. C. Boise to J. J. Osley, bond for title covering 380 acres of land in Madison and Hart counties, Georgia, the consideration expressed in the transfer being $10,000, the transfer bearing date of December 8, 1913.

"The transfer of the same bond for title, reciting the same consideration, from Patrick Osley to Mrs. Emma Osley, the transfer bearing date of December 19, 1913.

### "Conclusions of Law.

"It is contended by the defendants in this case that the trustee cannot maintain this suit because, say the defendants, he did not represent creditors who were creditors prior to December 8, 1913, the date the deed and transfer of bond for title from J. J. Osley to Patrick Osley bear. This proposition is not sound. A moment's reflection will suffice. The deeds and transfers of the bond for title were recorded on February 12, 1917. Under the evidence the physical possession of the properties was never changed at any time. There is no question but that some of the creditors represented by the trustee, notably Denny & Son and the Bank of Bowman and others, were creditors prior to that time. Suppose Denny & Son, or the Bank of Bowman, had reduced their claim to judgment, and had sought to enforce same by levy and sale of this property, and a claim had been filed by Mrs. Emma Osley, claiming under the deeds now sought to be established in this case, would she have been heard to say that those creditors could not attack her deed as fraudulent on the ground that it was not actually executed in 1913, and on the ground that it was a voluntary conveyance, without consideration, made for the purpose of hindering, delaying, and defrauding them? Most certainly not.

"Then the trustee stands in their shoes, and then this contention of the defendants is disposed of.

"This being a transaction between husband and wife and son, and attacked by creditors as fraudulent, the wife now seeking to hold the property in question under the deeds so attacked, the burden is on the defendants to show valid consideration and good faith of the transaction.

### "Conclusions of Fact.

"This is a case where a father undertook to deed all of his property through his son to his wife. The creditors attack the conveyances as fraudulent. The burden was thereby shifted to the defendants, and the defendants have not only failed to carry this burden, but the evidence in the case carries this case far beyond that of suspicion, and establishes by a preponderance of the evidence that the entire transaction was a fraudulent scheme on the part of all the defendants to put the property of J. J. Osley beyond the reach of his creditors.

"In the first place, J. J. Osley testified that he sold all of his property to his son, and his son, in turn, sold it to J. J. Osley's wife. The fact that a man sells out everything he has in a lump is a suspicious circumstance within itself.

"J. J. Osley testified on one occasion that the deed was made to secure a debt of $3,500, as recited in the deed. He testified on another occasion that it was an absolute conveyance. J. J. Osley testified that his son, Patrick Osley, let him have about $7,000 in money prior to the execution of the deed, and that on the delivery of the deed and transfer of the bond for title Patrick Osley paid him some $400 or $500. In the next breath he testified that he paid him $7,000. He then stuck to the $7,000, and swore that he paid it to him in cash money in the office of Alex S. Johnson, an attorney, at Royston, Georgia; that he paid him in actual cash. Patrick Osley contradicted him on this proposition. Patrick Osley swore that he paid him $7,000 in cash, but he was just as positive that it was not paid in Alex Johnson's office. J. J. Osley and Patrick Osley both swore that Mrs. Emma Osley paid over to Patrick Osley, at the time the deed and transfer from Patrick Osley to Mrs. Emma Osley bear date, the sum of $13,500 in actual cash money; that Mrs. Osley had saved up that much cash money over in Madison county on a farm, and yet prior to that time, when J. J. Osley needed some cash, to the amount of $3,500, he executed a security deed to C. C. Boise in order to obtain money, his wife having at that time, according to the evidence of these witnesses, some $13,000 in cash money in the house (the evidence is she did not keep it in bank). J. J. Osley testified that in 1913, when he received this $7,000 from his son, he did not owe a dollar in the world. He further testified that he tried to make his own bread and meat on his farm, and that his annual expenses were not over $300 to $500, and yet inside of five years we find this same man a voluntary bankrupt. He offered no explanation as to the disposition of this $7,000.

"Patrick Osley's testimony was equally as far-fetched as that of J. J. Osley. He did not undertake to explain how he came by $13,000 in actual cash.

"Mrs. Emma Osley was not put on the stand by either side.

"The above extracts from the evidence of J. J. Osley and Patrick Osley are but an index to their entire testimony, the whole of which is so improbable and unnatural as to be rendered unbelievable.

"The deeds from J. J. Osley to Patrick Osley and from Patrick Osley to Mrs. Emma Osley appear to have been written on forms printed by Bennett Printing & Stamp Company, Atlanta, Georgia. They bear a water mark, to wit, 'Courier Bond.' The plaintiff introduced Mr. W. C. Bennett as a witness. Mr. Bennett testified that he is president of the Bennett Printing & Stamp Company, of Atlanta, Georgia; that he has been connected with the concern twenty-four years. He swore that the Bennett Printing & Stamp Company did not use 'Courier Bond' paper for printing blank forms prior to August, 1916; that prior to that time they used a paper known as the 'Purchase Bond.'

"In describing the 31½ acres of land the following language is used: 'On the south by lands of L. S. Strickland and Mrs. Lillie McGarity.' According to the evidence, Mrs. Lillie McGarity is the widow of John McGarity. John McGarity owned the land referred to as bounding the 31½-acre tract on the south in his lifetime. John McGarity died, according to the evidence, in 1915.

"The evidence further shows that this 31½-acre tract deeded by J. J. Osley to Patrick Osley was part of a 56½-acre tract of land bought by J. J. Osley from Mrs. M. V. Brewer and ———. J. J. Osley testified that, when he made the deed to the 31½ acres to Patrick Osley and transferred the bond for title to the 380 acres, he sold to Patrick Osley every foot of land that he owned, and yet we find J. J. Osley, on the 27th day of November, 1915, deeding to L. W. Dorough the balance of this 56½-acre tract, off of which the 31½ acres was deeded to Patrick Osley, to wit, 25 acres. J. J. Osley offered no reasonable explanation as to why, in 1913, he deeded only 31½ acres to Pat, reserving 25 acres that two years later he was to deed to L. W. Dorough. The only explanation is that the 25 acres was already deeded to Dorough, and that the

deed to Pat was executed after the date of the Dorough deed. In fact, J. J. Osley swore that at the time he made the deed to Pat to the 31½ acres he deeded to him every foot of land he owned. If this is to be believed, then according to his own testimony the title to the 25 acres had already passed out of him.

"J. J. Osley made other deeds in 1915, and, strange to note, and rather significant, Pat's deed carries everything up to the boundaries of the tracts deeded to other parties in 1915.

"According to the evidence of J. J. Osley, it was his custom to withhold deeds from the records (the deeds to Pat and Mrs. Emma Osley were not recorded for over four years), and yet a number of deeds were introduced from various parties to J. J. Osley, and these deeds show invariably that they were recorded within a few days of their execution, possibly with one or two exceptions.

"J. J. Osley has been in possession of the land all the while since 1913, just as prior to that time. He swore that he had never told any one of the transactions between himself and his son and his wife.

"The inconsistencies mentioned reflect the entire evidence of the case; and it is the opinion of the master that the defendants not only failed to carry the burden, and show that this transaction was fair and for a valid consideration, but the evidence shows overwhelmingly that the defendants conspired to put the property of J. J. Osley beyond the reach of his creditors. The evidence fairly reeks with unexplained circumstances pointing only to this conclusion.

"The conclusion is inevitable that the deeds and transfers of the bond for title were all made at the same time.

"Under the evidence of Mr. Bennett, a disinterested witness, it is impossible that these deeds could have been written prior to August, 1916. Under the other evidence in the case, the deeds were certainly written and signed not earlier than 1915; and I find, as a matter of fact, that the deeds and transfers of the bond for title sought to be canceled were executed between August, 1916, and February 12, 1917, and were without consideration, and made for the purpose of hindering, delaying, and defrauding the creditors of J. J. Osley, known to all the defendants. The creditors represented by the trustee in this suit were creditors long before this time.

"The defendants contend that there is no evidence that A. C. Adams is trustee of J. J. Osley, bankrupt. The entire record from the bankruptcy court was introduced in evidence. Be that as it may, the plaintiff affirmatively alleges in paragraph 1 of his petition that he is trustee for J. J. Osley, bankrupt, and this is not denied by the defendants. It is therefore to be taken as true. [English v. Arizona] 214 U. S. 359, 361 [29 Sup. Ct. 658, 53 L. Ed. 1030].

"After careful and painstaking consideration of the testimony, I find that the deed to the 31½ acres of land from J. J. Osley to Patrick Osley, and the deed from Patrick Osley to Mrs. Emma Osley to the same tract of land, and the transfer of the bond for title from J. J. Osley to Patrick Osley, to an equity in 380 acres of land, and the transfer of the same bond for title from Patrick Osley to Mrs. Emma Osley were without consideration and made for the purpose of hindering, delaying, and defrauding certain of the creditors of J. J. Osley, represented by A. C. Adams, trustee for J. J. Osley, bankrupt, which was known to all parties concerned in the drawing and execution of the papers."

In conclusion, the master says:

"I therefore recommend that a decree be entered finding these conveyances void, and that the title to said property be decreed to be in the trustee of J. J. Osley, bankrupt."

[1, 2] The evidence abundantly supports the conclusion of the master in this case; indeed, to me seems to require it. At all events, there is no sufficient ground to justify sustaining any of the exceptions to

the report. Those exceptions which go to the master's ruling as to the burden of proof, and as to the effect of certain evidence, are wholly immaterial, because it seems to me that the evidence absolutely required the master to hold as he did. There was abundant evidence to justify him in holding that the deeds were made for the purpose of hindering, delaying, and defrauding creditors, as charged in the petition.

The exceptions are overruled and the report confirmed.