## DUNN v. FORT BEND COUNTY et al.

(District Court, S. D. Texas, at Galveston. December 22, 1926.)

No. 120.

1. Constitutional law ⬅➡42—Right to invoke protection of due process clause is personal (Const. Amend. 14).

The right to invoke the protection of the due process provision of the Constitution (Const. Amend. 14) is personal, and the validity of a statute cannot be attacked on the ground that it may deprive persons other than complainant of their property without due process of law.

2. Highways ⬅➡90—Purchasers of highway district bonds held not entitled to rescission of contract on ground of invalidity of statute, where district affirms validity, and has met all payments at maturity.

Purchasers of bonds of a highway district *held* not entitled to rescission of the contract of purchase and to recover so much of the purchase money as has not been expended by the district on the ground that the law under which the bonds were issued is invalid, where validity of the law has never been questioned by the district, which, on the contrary, affirms its validity, and has paid all installments of principal and interest of the bonds at maturity.

3. Highways ⬅➡90—Remedy at law of purchasers of highway district bonds, issued under alleged invalid statute, held adequate.

In such case, if complainants have any right of recovery, their remedy at law is adequate.

4. Highways ⬅➡90—Highway district, created under Constitution and statutes of Texas held legal organization (Const. Tex. art. 3, § 52; Rev. St. Tex. 1911, art. 627 et seq.).

A highway district, created pursuant to the form given by Texas constitutional amendment of 1904 (article 3, § 52) and the statute en-

acted to carry it into effect (Rev. St. Tex. 1911, art. 627 et seq.), is legal and valid.

**5. Constitutional law ⬅49—Decision of Supreme Court determines validity of state statute only as affecting rights of particular litigant.**

A decision of the Supreme Court as to the validity of a state statute declares its validity or invalidity only as it affects the rights of the particular litigant.

**6. Constitutional law ⬅43(1)—Right to question constitutionality of statute may be lost by waiver or estoppel.**

The right to question the legality of the organization of a highway district on constitutional grounds *held* lost by waiver or estoppel, where it had been in existence as a going concern and unchallenged for 16 years.

**7. Highways ⬅90—Legislature may by ratification legalize previously organized highway district.**

A Legislature, having power to authorize formation of a highway district, may by ratification legalize a district previously organized.

In Equity. Suit by Guy C. Dunn against Fort Bend County and others. On application for injunction. Denied.

John D. McCall, of Conroe, Tex., and Thomas E. Elcock, of Wichita, Kan., for plaintiff.

F. M. O. Fenn, Co. Atty., of Richmond, Tex., Riley Strickland, of Sugar Land, Tex., and McFarlane & Dillard, of Houston, Tex., for defendants.

Before FOSTER, Circuit Judge, and WEST and HUTCHESON, District Judges.

HUTCHESON, J. This is a suit in equity whose object is to obtain a decree enjoining the defendants, who are certain officials, the county depository, and Fort Bend county, from using any of the proceeds derived from the sale of bonds, and ordering them to pay over to plaintiff and interveners, as the holders of the bonds, the moneys on hand derived from their sale, plaintiff and interveners tendering back the bonds.

The ground on which this claim is based is, as stated in plaintiff's brief, "that the law under which the bonds were issued is invalid, that the bonds are invalid, and that the district has no enforceable existence."

This claim was made and this suit brought after and because of Browning v. Hooper, 269 U. S. 396, 46 S. Ct. 141, 70 L. Ed. 330, the "Archer County Case," in which the Supreme Court, upon a petition brought to restrain the issuance and sale of bonds of Archer county road district No. 2 on the ground that the creation of the road district and the enforcement of the proposed tax would deprive them of their property without due process of law, in violation of the Fourteenth Amendment, sustained the prayer for relief, holding that the act as to plaintiffs was repugnant to the due process clause of the Fourteenth Amendment.

Plaintiffs here contend that that decision established, not merely that the plaintiffs in that suit were entitled to the relief prayed, but that all road districts, including Fort Bend county road district No. 1, having been created under the same act condemned in the Archer County Case, have been invalidly created, and all securities issued by them are void.

Upon this predicate they assert that, to the extent that they can trace and locate the moneys received from the sale of the bonds, they are entitled in equity to cancel the transactions between them and the county, involving the bonds, and recover the very proceeds before they have been spent and have passed beyond their reach; they claiming that, if the district is void and has no existence, they have no adequate remedy at law to recover their money either on the bonds or upon implied contract for value received.

In addition, plaintiffs assert the apparently contradictory claim that, though the bonds are void, and they would have no remedy at law either to collect on them or for money had and received, they are yet entitled, as to any balance remaining due them after the proceeds on hand are applied, to have their judgment against the county on the ground that the county has used the money for the improvement of roads and legitimate county purposes.

The defendants oppose plaintiff's suit in whole and in part. In whole, on the ground that plaintiff has an adequate remedy at law, if not on the bonds, at least on implied contract for money had and received, and expended for the county's benefit. In part, that as to some of the moneys anyway on hand, the district has already contracted and incurred obligations, so that superior equities arise as to those funds which would prevent the plaintiffs from obtaining them back, they having been already pledged to discharge these obligations; assumed on the faith of the funds being on hand and available.

[1] I am still of the same opinion expressed on the oral argument of this case that the right to invoke the protection furnished by the due process clause of the Fourteenth Amendment is a purely personal right or

privilege, and the condemnation of a statute in a particular case as repugnant to that amendment as to the plaintiff in it does not, and cannot, affect or impair the statute itself as a valid and existing law, or corporations created under it as valid and existing corporations under the laws of the state of their creation, except as to the particular person complaining, and as to the particular thing he complains of; that the district and the bonds are valid as to these plaintiffs and this suit; that plaintiff and interveners have an adequate remedy at law against a validly created and existing district.

[2, 3] A brief statement of the situation will, we think, furnish an adequate support for the conclusions announced.

In 1904 the people of the state of Texas, recognizing the inseparable connection between good roads and good citizenship, caused to be passed an amendment (article 3, § 52) to the state Constitution, which, in substance, provided that, under legislative provision, districts composed of adjoining counties, single counties, or any defined district in a county then or thereafter to be described and defined, may, under a vote of two-thirds majority of the resident property taxpayers, issue bonds in an amount not exceeding one-fourth of the assessed valuation, and make provision for the levy and collection of taxes to discharge the same for, among other things, "the construction, maintenance, and operation of macadamized, graveled, or paved roads and turnpikes, or in aid thereof."

The broad character and sweeping purpose of this provision were commented upon and approved by the Supreme Court of Texas in Aransas County v. Coleman-Fulton Pasture Co., 108 Tex. 216, 191 S. W. 553, the Supreme Court saying: "Upon the general subject of road improvement, it marked a radical departure from the previous policy of the state. It was the response to a public demand that provision be made whereby the state, and every section of the state, might be supplied through voluntary taxation with adequate, durable and permanent roadways. * * * In a word, the purpose of this amendment plainly was to provide the means of building and maintaining not alone neighborhood, precinct or even county roads, but adequate road systems throughout the entire state, to be availed of by larger or smaller areas as might be desired, so as to afford through the exercise of a liberal taxing power widely distributed, adequate and continuous highways through every section of the state. Such a purpose stands out, boldly,

we think, in the broad and sweeping provisions of the amendment."

Carrying out the mandate of the people so expressed, the Legislature by a brief and simple act made provision for the creation of road districts, provided for an election and the issuance of bonds and levy of taxes as required in the Constitution, and, while the act provided that the county commissioner in the precinct in which the road district is shall be ex officio road superintendent, and availed itself of the organization of the commissioners' court in the matter of the levy of taxes, the issuance of bonds, and the looking out generally for the affairs of the district, it yet conferred upon the district when created a distinct corporate status, and fixed upon it full obligation for its contracts; article 637 (Rev. St. Tex. 1911) providing that any such district accepting the provisions of this subdivision by voting such a tax is hereby made and created a body corporate, which may sue and be sued in like manner as counties. Horn v. Matagorda County (Tex. Com. App.) 213 S. W. 934.

Under this law the Fort Bend county road district No. 1 was established on November 8, 1909. On May 9, 1910, bonds to the amount of $150,000 were issued. Of these bonds, $78,000 have been redeemed. None of the persons holding these bonds are parties to this suit, or are in any manner appearing or making claim adverse to the district either here or before the county commissioners' court. No suit has ever been filed by any taxpayer in road district No. 1 contesting the validity of the district to be or to be taxed.

The particular bonds involved in this suit are part of an issue authorized by an election in 1922. Some of these bonds have been paid, and the interest on all has been regularly paid.

Neither Fort Bend county, the road district, nor any taxpayer in it, is contesting the bonds, or in any manner disputing them or questioning them, but, on the contrary, all are affirming their validity, and are not only ready and willing to pay them, principal and interest, as they mature, but the proper officers have been making, and are continuing to make, the proper tax levy to provide for their payment as and when due.

The stipulation, among other things, contains the following: "The Old Spanish Trail is a transcontinental highway, and, designated as a state and federal highway, traverses Fort Bend county for about 30 miles, 15 miles of which is in road district No. 1. Approximately two-thirds of the proceeds of

the total bond issues of said district have been spent on the Old Spanish Trail, and this highway accommodates four channels of traffic, which converge at Rosenberg, from that point to Houston. There is no other highway in said county which fully traverses the county, and no other state and federal highway which reaches the county seat or affords a bridge across the Brazos river. In fact no other state and federal highway has a bridge across the Brazos river for many miles each way. All of the by-roads of Fort Bend county connect with and lead to this highway, and all the people of said county have used, and still use, said highway extensively. All of said county has been benefited by said highway and the use of the proceeds of the bonds for road district No. 1."

[4] That the district is a valid and subsisting district in accordance with the Constitution and laws of Texas not only appears plainly from the constitutional provision itself and the laws under it, the Legislature being given by that provision plenary power in making provision for its creation, but the validity of these districts and their right to issue bonds have been expressly affirmed in repeated and vigorous decisions of the Supreme Court of this state discussing this provision of the Constitution and the statutes enacted under it, and directing the approval of bonds issued in pursuance of these laws.

In Simmons v. Lightfoot, 105 Tex. 212, 146 S. W. 871, an action against the Attorney General of the state to compel him to approve $100,000 of road bonds of district No. 4 Liberty county, the court expressly approved the constitution of a road district created under the very laws challenged here, and directed the Attorney General to approve its bonds, and in Munson v. Looney, 107 Tex. 263, 172 S. W. 1102, 177 S. W. 1193, the whole matter was again considered, and Simmons v. Lightfoot was expressly approved.

But it is said that all of these considerations must yield to the opinion and decree of the United States Supreme Court declaring that these districts are existing in violation of the Constitution of the United States, and therefore without power to be districts, to issue bonds, or levy taxes in support thereof. That it did not deliver any such opinion, or make any such order, but that it merely held the plaintiffs there entitled to their injunction, a simple reading of the opinion will abundantly show.

[5] That the Supreme Court of the United States could not have delivered any such opinion or made any such order in Browning v. Hooper, as the plaintiffs claim that it

did, a consideration of the effect upon legislation of the Fourteenth Amendment as reflected in the decisions of the Supreme Court of the United States will show. These decisions establish: (1) That the Supreme Court does not act at all upon a statute or undertake by any decree to affect it generally; that it merely declares the law applicable to the case of a particular litigant. (2) That the inquiry under the Fourteenth Amendment does not and cannot embrace the general question of the validity of the statute, but it undertakes only to determine, and has only the effect of determining, whether the rights of the particular litigant are protected by the Fourteenth Amendment against the operation of that statute.

In Dahnke-Walker Milling Co. v. Bondurant, 257 U. S. 289, 42 S. Ct. 106, 108 (66 L. Ed. 239) the court said: "A statute may be invalid as applied to one state of facts and valid as applied to another. * * * Besides, a litigant can be heard to question a statute's validity only when and so far as it is being or about to be applied to his disadvantage." See, also, Yazoo & Mississippi River v. Jackson, 226 U. S. 218, 33 S. Ct. 40, 57 L. Ed. 193; Jeffrey Mfg. Co. v. Blagg, 235 U. S. 576, 35 S. Ct. 167, 59 L. Ed. 364.

The Supreme Court has said in numbers of cases that the due process clause of the Fourteenth Amendment operates on state legislation in the same manner as the due process clause of the Fifth Amendment operates on similar legislation by Congress. In French v. Barber Asphalt Co., 181 U. S. 324, 21 S. Ct. 625, 45 L. Ed. 879, Tonawanda v. Lyon, and others, in 181 U. S. 391, 21 S. Ct. 609, 45 L. Ed. 908, and in Massachusetts v. Mellon, 262 U. S. 447, 43 S. Ct. 597, 67 L. Ed. 1078, the court most clearly set down the ratio decidendi and the effect of decisions in due process cases. In that case the court said: "We have no power per se to review and annul acts of Congress on the ground that they are unconstitutional. That question may be considered only when the justification for some direct injury suffered or threatened, presenting a justiciable issue, is made to rest upon such an act. Then the power exercised is that of ascertaining and declaring the law applicable to the controversy. It amounts to little more than the negative power to disregard an unconstitutional enactment, which otherwise would stand in the way of the enforcement of a legal right. The party who invokes the power must be able to show not only that the statute is invalid but that he has sustained or is immediately in danger of sustaining

some direct injury as the result of its enforcement, and not merely that he suffers in some indefinite way in common with people generally. If a case for preventive relief be presented the court enjoins, in effect, not the execution of the statute, but the acts of the official, the statute notwithstanding."

From which it appears that all that has been done by the Supreme Court in the Archer County Case is that it has said to a citizen who in a timely way invoked the amendment: "This act, if enforced, would deprive you of a right under the Fourteenth Amendment and we therefore grant you the relief by injunction prayed."

The Fort Bend county road district was valid under the state laws, and still is valid under those laws. It was authorized to operate as a district levying and collecting taxes and issuing bonds, and it still may do so, in all respects and against all persons, except in a case in which some individual is in a position to claim that he has a right under the Fourteenth Amendment to claim relief.

These general considerations we think sufficient, without others, to defeat plaintiff's suit, for, even if the facts showed that there are some persons in the district in a position to defeat the tax as to them, this would not be sufficient to authorize plaintiffs to rescind their contract and recover back money which they had voluntarily paid, not to the county, but to others who bought from the county.

[6] There are other considerations, however, which make it more clear that plaintiffs present no equity whatever for relief. The first of these is that the invocation of the Fourteenth Amendment is a privilege; that the fact that a statute may be obnoxious to the Fourteenth Amendment as to a particular person does not mean at all that it may be so as to another; and that this right to invoke the Fourteenth Amendment, being a personal privilege, may be lost by election, waiver, or estoppel.

The facts in this case, in the light of the decisions, leave no doubt that any person who might at any time have questioned the validity of the district has long since lost that right by estoppel, waiver, or election; the district having existed as a going district for more than 16 years.

In Pierce Oil Co. v. Phœnix Refining Co., 259 U. S. 125, 42 S. Ct. 440, 66 L. Ed. 855, the court said: "There is nothing in the nature of such constitutional right as is here asserted to prevent its being waived, or the right to claim it barred, as other rights may be, by deliberate election or by conduct inconsistent with the assertion of such a right."

In Muscatine Lighting Co. v. Muscatine (D. C.) 256 F. 933, the court said: " 'A person may, by his acts or omission to act, waive a right which he may otherwise have under the provisions of a constitution; and where such acts or omissions have intervened, a law will be sustained which otherwise might have been held invalid, if the party making the objection had not by prior acts precluded himself from being heard in opposition.' " See Pierce v. Somerset Ry., 171 U. S. 648, 19 S. Ct. 64, 43 L. Ed. 316; Eustis v. Bolles, 150 U. S. 361, 14 S. Ct. 131, 37 L. Ed. 1111; Shepard v. Barron, 194 U. S. 553, 24 S. Ct. 737, 48 L. Ed. 1115; Wight v. Davidson, 181 U. S. 371, 21 S. Ct. 616, 45 L. Ed. 900; Lampassas v. Bell, 180 U. S. 276, 21 S. Ct. 368, 45 L. Ed. 527; English v. Arizona, 214 U. S. 359, 29 S. Ct. 658, 53 L. Ed. 1030.

[7] The second of these is that, since the filing of this suit as appears by supplemental agreed statement of facts, at its first called session the Thirty-Ninth Legislature of the state of Texas (Laws 1925, c. 133) passed an act creating road district No. 1, validating and approving all orders and acts of the commissioners' court with reference to the district, and all bonds issued by it. Schneider Granite Co. v. Gast Investment Co., 245 U. S. 291, 38 S. Ct. 125, 62 L. Ed. 292; Charlotte Harbor Ry. v. Welles, 260 U. S. 8, 43 S. Ct. 3, 67 L. Ed. 100, in the latter case the court saying: "The general and established proposition is that, what the Legislature could have authorized, it can ratify if it can authorize at the time of ratification. * * * And the power is necessary, that government may not be defeated by omissions or inaccuracies in the exercise of functions necessary to its administration."

It appearing, therefore, that the district is a valid district under the laws of this state, and fully liable on its contracts, that there are no persons who could question its validity as obnoxious to the Fourteenth Amendment, and that, if there were any, the state has validated the district by appropriate legislative action, it is plain that plaintiffs have an adequate remedy at law on their bonds, and that their prayer for equitable relief must be denied.