### HONOLULU RAPID TRANSIT CO., Limited, v. WILDER, Tax Assessor.

Circuit Court of Appeals, Ninth Circuit.
November 25, 1929.

No. 5763.

A. G. M. Robertson, A. L. Castle, W. A. Greenwell, A. Withington, and J. Garner Anthony, all of Honolulu, Hawaii, for appellant.

H. R. Hewitt, Atty. Gen., and C. Nils Tavares, Deputy Atty. Gen., for appellee.

Before RUDKIN, DIETRICH, and WILBUR, Circuit Judges.

RUDKIN, Circuit Judge. Section 12 of the franchise of the Honolulu Rapid Transit Company, Limited, as originally enacted, provided as follows: "The company shall, during the month of January of each year, pay to the City and County of Honolulu two and one-half per cent (2½%) of its gross income from its railway during the preceding calendar year." Act 186, Session Laws of Hawaii 1921. In 1925 this section was amended by adding thereto the following proviso: "Provided, however, that no such payment shall be made, and said company shall be exempt therefrom, for each and all

of the calendar years beginning January 1, 1925, and ending December 31, 1928, also provided, however, that if the Honolulu Rapid Transit Company Limited, is granted an increased fare over the existing street car fare, that this aforesaid exemption shall cease from the date of the inauguration of such increased fare." Act 227, Session Laws of Hawaii 1925.

Section 1320 of the Revised Laws of Hawaii 1925 provides that all real and personal property shall be assessed separately as to each item thereof for its cash value, provided that in all cases where real and personal property, or several classes or kinds or parcels of real or personal property, respectively, are combined or made the basis of an enterprise for profit, the combined property forming such basis of such enterprise for profit shall be assessed as a whole on its fair and reasonable aggregate value. "Provided also, that the combined property of every corporation holding a public utility franchise and occupying the public streets or highways of the Territory, other than any such corporation that by the terms of its franchise is required to pay a percentage of its gross income to the Territory, or county or city and county, shall be valued and assessed at not less than the total amount of the par value of the capital stock issued by such corporation."

April 15, 1928, the Public Utilities Commission of the Territory increased the rate of fare of the transit company to ten cents, or two tokens for fifteen cents. For the tax year 1928 the transit company returned its property to the assessor for the proper division at a valuation of $1,750,000, as of January 1, 1928. The assessor however determined that the transit company was holding a public utility franchise and occupying the public streets of the territory, and was not by the terms of its franchise required to pay a percentage of its gross income to the territory, or county or city and county. He therefore fixed the value of the property at the sum of $2,500,000, the par value of the capital stock issued by the corporation. It was conceded that the cash value of the property of the transit company at the date in question did not exceed $1,750,000, as returned by it. The case was then submitted to the Supreme Court of the Territory on an agreed statement of facts, of which the foregoing is a brief summary. The questions for decision were: First, was the valuation of the property of the transit company for tax purposes properly fixed in the sum of $2,500,000, the par value of the capital stock issued by the company; and, if so, second, is a statute constitutional which makes the par value of the issued stock, rather than the cash value of the corporate property the basis for taxation? The Supreme Court of the Territory answered both questions in favor of the assessor, and from the judgment of that court the transit company has appealed.

█ █ The first question thus presented involves the construction of local tax laws, and the rule is well settled that an appellate court will not disturb the construction placed on such laws by the Supreme Court of a territory, except for manifest error. Fox v. Haarstick, 156 U. S. 674, 679, 15 S. Ct. 457, 39 L. Ed. 576; Copper Queen Mining Co. v. Arizona Board, 206 U. S. 474, 479, 27 S. Ct. 695, 51 L. Ed. 1143; English v. Arizona, 214 U. S. 359, 29 S. Ct. 658, 53 L. Ed. 1030; Notley v. McMillan (C. C. A.) 16 F.(2d) 273. And, if we are to be guided by the language of the statutes alone, the conclusion of the Supreme Court of the Territory would seem to follow almost as a matter of course, because it is manifest that when the tax return for 1928 was made the appellant, by the terms of its franchise, was not required to pay a percentage of its gross earnings to the territory, or county, or city and county, and that its combined property should therefore be valued and assessed at not less than the total amount of the par value of its issued capital stock.

It is contended, however, that it was the manifest purpose of the franchise amendment of 1925 to reduce the taxes of the appellant, and that its taxes will be considerably increased if the construction placed on the territorial laws by the Supreme Court of the Territory is permitted to stand. No doubt it was the purpose of the Legislature to reduce the taxes by suspending the requirement that a certain percentage of the gross earnings be paid to the territory, or county, or city and county, and it may be that the Legislature failed to accomplish its purpose because of extrinsic facts. Perhaps the Legislature was not aware of, or did not take into consideration, the fact that the par value of the issued capital stock of the appellant greatly exceeded the value of its property, and if it was aware of the discrepancy, perhaps it did not contemplate that the same discrepancy would exist in the future, because that matter rested largely with the corporation itself and with its officers and stockholders. In any event, we are not convinced that the construction placed on the tax laws

of the territory by the court below is clearly wrong, and beyond this we are not at liberty to inquire.

Nor do we see any merit in the constitutional question presented. The Legislature is vested with a wide discretion in the classification of persons and property for purposes of taxation, and so long as there is no discrimination between members of the same class, a lack of uniformity as between different classes is no objection to the tax. In Michigan Central Railroad Co. v. Powers, 201 U. S. 245, 293, 26 S. Ct. 459, 50 L. Ed. 744, the court quoted with approval from the opinion of the Circuit Court, as follows: "There can at this time be no question, after the frequent and uniform expressions of the Federal Supreme Court, that it was not designed by the Fourteenth Amendment to the Constitution to prevent a State from changing its system of taxation in all proper and reasonable ways, nor to compel the States to adopt an ironclad rule of equality, to prevent the classification of property for purposes of taxation, or the imposition of different rates upon different classes. It is enough that there is no discrimination in favor of one as against another of the same class, and the method for the assessment and collection of the tax is not inconsistent with natural justice." Cases almost without number might be cited to the same effect. Metropolitan Street Ry. Co. v. State Board of Tax Com'rs, 199 U. S. 1, 25 S. Ct. 705, 50 L. Ed. 65, 4 Ann. Cas. 381; Toyota v. Hawaii, 226 U. S. 184, 33 S. Ct. 47, 57 L. Ed. 180; Pullman Co. v. Knott, 235 U. S. 23, 35 S. Ct. 2, 59 L. Ed. 105. Under these authorities, there is no constitutional objection to an act placing corporations holding public utility franchises and occupying the public streets and highways in a class by themselves for the purpose of taxation; nor is there any objection to the requirement that such corporations shall pay a tax on a valuation equal, at least, to the par value of their issued capital stock. Bell's Gap R. Co. v. Pennsylvania, 134 U. S. 232, 10 S. Ct. 533, 33 L. Ed. 892; Roberts & Schaefer Co. v. Emmerson, 271 U. S. 50, 46 S. Ct. 375, 70 L. Ed. 827, 45 A. L. R. 1495. The object of this latter requirement was, perhaps, to discourage the overcapitalization of public utility corporations; but whatever the object, it cannot be said that the classification complained of, in any of its aspects, is either arbitrary or without the pale of reason.

The judgment is therefore affirmed.