Stembel *v.* Bell.

---

### STEMBEL ET AL. *v.* BELL ET AL.

[No. 20,143.   Filed October 27, 1903.]

TOWNS.—*Incorporation.*—*Census.*—The failure to list the head of a family, the family consisting of husband, wife, and child, in enumerating a population of 1,131 persons, preparatory to the incorporation of a town, as required by §4315 Burns 1901, will not render the incorporation invalid.   *pp. 325, 326.*

SAME.—*Incorporation.*—*Census.*—*Initials for Christian Names.*—The use of initials for Christian names in the enumerating list of the population resident within territory sought to be incorporated in a town did not vitiate the census.   *p. 326.*

SAME.—*Incorporation.*—*Petition.*—*Notice.*—Notice of the filing of the petition with the board of commissioners for the incorporation of a town is not required.   *pp. 326, 327.*

SAME.—*Incorporation.*—*Curative Act.*—The act of 1903 (Acts 1903, p. 333) to legalize the incorporation of the town of Oxford cured all infirmities of the incorporation proceedings thereof, as the infirmities were matters of detail, and not jurisdictional.   *pp. 327, 328.*

From Superior Court of Tippecanoe County; *H. H. Vinton,* Judge.

Proceeding by James H. Bell and others for the incorporation of the town of Oxford, to which Theophilus Stembel and others moved to dismiss, and filed remonstrances. From a judgment in favor of petitioners, remonstrators appeal. *Affirmed.*

*Lee Diniwddie, E. P. Hammond, W. V. Stuart* and *D. W. Simms,* for appellants.

*James McCabe* and *E. F. McCabe,* for appellees.

HADLEY, J.—Acting under the statute for the incorporation of towns, beginning with §4314 Burns 1901, persons intending to make application for the incorporation of certain territory into the town of Oxford, caused to be made and verified by a practical surveyor an accurate survey and map of such territory in conformity with said §4314. A verified census of the population resident within the territory was taken under the provisions of §4315 Burns 1901 not more than thirty days before the application for incorporation was made to the board of commissioners, and said survey, map, and census, after completion and verification, were left at a convenient public place within the territory, for examination by those interested in the application, for a period of not less than twenty days, as provided in §4316 Burns 1901, notice of which fact and the place where the same might be found having been, on December 12, 1900, given by posting printed notices thereof in ten public places within the territory proposed to be incorporated, under §4316, *supra.* On January 5, 1901, in conformity to §4317 Burns 1901, a petition for such incorporation, signed by more than one-third, to wit, 164, of the qualified voters residing within said territory, was presented to the board of commissioners. No notice of the time of presenting said petition was given. Such further proceedings were had that at an election held 251 of the voting inhabitants voted for incorporation and twenty-seven against it, and upon the proper showing the commissioners entered an order declaring said territory

incorporated as the town of Oxford. Appellants at the proper time appeared before the commissioners and moved to dismiss the proceeding for want of notice of the time for presentation of the petition, and also filed remonstrance against the sufficiency of the census. The overruling of the motion to dismiss, and an adverse finding on the remonstrance by the circuit court on appeal, form the basis of the questions before us for decision. These questions are two, stated by appellants as follows: "The points that we make against the legality of the proceedings are that no notice was given of the application before the county board, as required by §4317, *supra;* and that no census was ever taken as required by §4315, *supra,* exhibiting the name of every head of a family residing within the territory, and the number of persons belonging to such family." It is admitted that the order for an election and all subsequent proceedings were regular.

1. With respect to the second ground of complaint the record discloses that out of a total population of 1,131 and of a voting population of 323 the name of Charles Wheeler, as a head of a family, is wholly omitted. Wheeler, at the time of the census, had a wife and child, and resided within the territory. It is further shown that the wife and daughter of Hiram Stephenson were living within the territory, but Stephenson at the time was employed at Indianapolis, where he subsequently moved his family. Also the wife of Henry B. Kiger was living in the territory, but Kiger himself was working in Warren county, and at the time of trial was living in Fountain county; his wife, though undivorced, in the meantime having continued to live in Oxford.

The residence of the wife was with the husband, and, whether the legal residence of Stephenson was in Indianapolis, and that of Kiger in Warren county, at the time the census was taken, were questions of fact, determined by the court against appellants upon the weight of the

affidavits in support of the census and other evidence, and we can not review the conclusion. *Indiana Imp. Co.* v. *Wagner,* 138 Ind. 658; *Cabinet Makers' Union* v. *City of Indianapolis,* 145 Ind. 671; *Mead* v. *Burk,* 156 Ind. 577.

It is not important that we decide, and we do not decide, that the provisions relating to a census are mandatory or directory only; for, whether one or the other, this appeal can not be sustained for an insufficient census. That Charles Wheeler was a resident head of a family, and was omitted from the enumeration of that class, is not denied. But failing to list the head of one family of three —husband, wife, and child—in enumerating a population of 1,131 persons, is such a trifling omission that the law will not regard it. A census so nearly perfect is in substantial compliance with the statute, even if mandatory. The use of initials for Christian names in the enumerating list did not vitiate the census. *State, ex rel.,* v. *Beck,* 81 Ind. 500; *Collins* v. *Marvil,* 145 Ind. 531; *Goodrich* v. *Slangland,* 155 Ind. 279.

2. Appellants were not entitled to notice of the time of presenting the application to the commissioners, as provided in §4317, *supra,* unless they show us a statute conferring such a right. This they have not done, and we are unable to find one. A clause in the latter part of §4317, *supra,* seems to imply the giving of notice of some sort, without suggesting the character, service, or duration, and without enjoining the giving of any. The fact is that such notice is not now required and has never been required by any statutory scheme for the incorporation of towns since the organization of the State. R. S. 1831, p. 522; R. S. 1838, p. 588; R. S. 1843, p. 387; 1 R. S. 1876, p. 874; 1 G. & H., p. 619. There appears no good reason for such a notice. When a petition, signed by more than one-third of the resident voting population of the district, accompanied by the required survey, map, and census, is presented to the board of commissioners, they

have no discretion when once they have satisfied themselves that the survey, map, and census have been exposed to examination in the manner and for the period required by the statute; but it becomes an imposed duty to submit the question of incorporation to the voters of the district. The preliminary steps in the proceeding to secure the election imperils no right of the citizen. It is the election that counts. The ballot box is the forum that adjudicates his rights, and of the time and place of election he is entitled to notice, and had it in this case strictly in accordance with the statute. The question we have here is like the question before the court in *Board, etc.,* v. *Reeves,* 148 Ind. 467, 476, where it was held that dissenting citizens were not entitled to notice of the time of presentation of a petition for an election to determine whether a free gravel road should be constructed under the act of 1895 (Acts 1895, p. 143).

3. This appeal must fail for another reason. At the legislative session of 1903 a curative act was passed in these words: "An act to legalize the incorporation, laws and official acts of its officers, ordinances, resolutions, minutes and proceedings of the several town boards of the town of Oxford, Benton county, Indiana, and declaring an emergency. Section 1. Be it enacted by the General Assembly of the State of Indiana, that all steps taken and all acts done in and about the incorporation of the town of Oxford, in Benton county, Indiana, be and the same are hereby legalized and declared to be legal and valid, and all elections of officers of said town and all official acts, ordinances, resolutions, minutes and proceedings of the several boards of trustees of said town are hereby declared to be legal and valid. Section 2. Whereas an emergency exists for the immediate taking effect of this act, therefore the same shall be in full force and effect from and after its passage." Acts 1903, p. 333. The steps taken and acts done in and about the incorporation of the town

of Oxford were not jurisdictional infirmities, but were matters of detail that might have been dispensed with by the legislature by a former statute, and are within the ratification and curative powers of the lawmaking body. *Strosser* v. *City of Ft. Wayne,* 100 Ind. 443, 454; *Johnson* v. *Board, etc.,* 107 Ind. 15; *Schneck* v. *City of Jeffersonville,* 152 Ind. 204.

Judgment affirmed.