[No. 21604. *En Banc.* May 28, 1929.]

JOE DESIMONE *et al., Appellants,* v. W. W. SHIELDS *et al., Respondents.*[1]

*Tucker, Hyland & Elvidge (Mary H. Alvord* and *W. Stevens Tucker,* of counsel), for appellants.

*Shorett, McLaren, Shorett & Taylor,* for respondents Wilson *et al.*

*Shank, Belt & Fairbrook,* for respondent Puget Sound Savings & Loan Association.

TOLMAN, J.—Appellants, as plaintiffs, brought this action to set aside the proceedings leading up to the

[1]Reported in 277 Pac. 829.

formation of a water district, and to cancel and set aside the purported liens upon lands owned by them created by the water district and by a local improvement district organized under and coextensive with the water district. The trial court, on the merits, denied the plaintiffs any relief, and they have appealed.

Speaking generally, it appears that in 1926 there was a community containing approximately three thousand acres of land, adjacent to the city of Seattle on the south, and bisected by the Des Moines highway, which was slow in development, because, it was believed, of a lack of an adequate water system; the community generally being dependent upon individual wells for water for domestic purposes, and having no other water supply. The question became of general interest in the community, several public meetings were held, which seem to have been well attended by residents of the district, in which the water question was discussed, and a sentiment strongly favoring the organization of a water district was developed. Thereupon a committee was appointed to ascertain and determine upon the most feasible boundaries for the proposed water district, and for other preliminary purposes.

The area in question contained approximately one-half mile of level land, immediately south of the city limits of Seattle, principally used for truck gardening. South from the garden land, the ground rises steeply to a height of 300 or 400 feet, and, at this approximate level, continues to the southerly line of the district, the higher lands being suitable for residence purposes only.

The original idea seemed to be to have the northern boundary of the water district follow closely the brow of the hill, thus excluding the garden land from the district.

The members of the committee interviewed property owners for the purpose of ascertaining their wishes as to being included in the proposed district. One of the committee interviewed the residents and operators of the truck garden lands, and apparently found that they, or most of them, were desirous of being included in the district.

All of the appellants, except one, owned property in this strip of garden land along the northerly edge of the district as formed. One of the first of the appellants to be interviewed was Joe Desimone, who is a truck gardener on a large scale. He owns and farms a considerable tract of land lying north of Burns avenue, and not included in the district, and also considerable land just south of Burns Avenue, which is included in the district. Mr. Desimone has a water system of his own by means of which he irrigates his garden land, and, prior to the formation of the district, he also sold surplus water to other gardeners operating south of Burns avenue and now included in the district.

There is a direct conflict in the evidence as to the attitude toward the formation of the district then evidenced by Mr. Desimone, but it is not denied that he had full knowledge of the laying of water mains along Burns avenue, which should have indicated to him that the property south thereof was intended to be served.

The committee, finding what it considered a strong sentiment in support thereof, reported in favor of making Burns avenue the north boundary line of the district, and, in consequence, the north boundary line of the proposed district was fixed as running along the section line which is but a few feet north of Burns avenue. After the boundary lines had been determined upon by the committee, petitions were framed, the nec-

essary signatures were obtained and the district was organized under Rem. Comp. Stat., §§ 11579 *et seq.*, and given the name of Water District No. 20 of King county, Washington.

Commissioners were duly elected, engineers were employed and a comprehensive scheme was adopted by the commissioners, consisting of purchasing water from the city of Seattle and, by pumping into storage tanks, making it available throughout the district. This comprehensive scheme was duly ratified by the voters of the district, and thereafter the system was installed.

At the time of the ratification of the plan by the voters, there was also authorized the issuance of general obligation bonds by the district in the total sum of $27,700, which general obligation bonds were thereafter issued and sold on competitive bids, the respondent Marine National Company purchasing the entire issue of these bonds, being the owner thereof at the time this litigation arose and when the case was tried. The funds derived from the sale of the general obligation bonds were used to pay the expense of bringing the water from the city into the district, to pay the engineering expenses, and all other expenses common to the whole district.

Thereafter, on petition of a majority of the property owners, a local improvement district was organized coextensive with the boundaries of the water district, except as to a small portion in the northeast corner of the district, which was omitted. Thereafter a distribution system was installed, consisting of some 21 or 22 miles of mains, partly steel and partly wooden, and, to insure sufficient pressure and a reserve supply of water, two tanks of fifty thousand gallons each were erected, and one concrete reservoir was built. Three electric pumps were installed to pump water

into the tanks and reservoir. Fire hydrants were also installed, thus giving the first and only protection against fire. Upon the installation of this system, water became available throughout all parts of the district, with adequate pressure for domestic use. The cost of installing the distribution system was approximately the sum of $100,000.

The installation of the system commenced about August 1, 1926, and continued to the middle of January, 1927. As the work progressed, the contractor was paid in warrants drawn on the general construction fund or on the local improvement district fund, depending on the work done.

After the system was installed and accepted, the total cost was determined, an assessment roll was prepared by the commissioners of the local improvement district, a hearing was had on the assessment roll, after which the roll was confirmed. Property owners were given the opportunity to pay their assessments in cash, and something like $11,000 was so paid. The balance of the assessment roll totaled $87,400 and the commissioners thereupon issued bonds of the local improvement district, and exchanged the bonds for the local improvement district warrants then outstanding.

The respondent Puget Sound Savings & Loan Association was the holder of all of these warrants, and, upon their surrender, became, and ever since has been, the owner of the entire issue of the local improvement district bonds.

There seems to be no question but that the installation of this water system was a direct and very substantial benefit to all of the lands situated in the district. The price of lands increased, sales became more frequent and larger percentages of cash payments were obtainable as sales were made.

At the time the system was installed, there were ap-

proximately 1,500 people living in the district, and apparently the system is adequate for a population three times as great. When first installed, there were ninety consumers of water in the district. At the time of the trial, the system was serving 277 homes out of a total of less than 400 in the district, and each new house erected since the system was installed has at once been connected with the water system.

This action was not commenced until approximately one year after construction work began, and eight months after the system was completely installed and in operation.

Upon what we consider the controlling facts here, the trial court found:

"That the plaintiff Joe Desimone agreed to the establishment of the north boundary line of the said district at its present location at the time of the preparation for circulation of the original petition for the formation of the said water district and also agreed to the location of the north boundary line of the local improvement district No. 1 created within said district at the time of the preparation for circulation of the petition for the creation of the said local improvement district No. 1; and by the said acts as aforesaid the said plaintiff has ratified all the proceedings going to the formation of the said district and of the levying of the said assessments and taxes.

"That the defendant Water District No. 20 caused to be levied during October 1926 a levy for the maintenance, construction and payment of interest on the general obligation bonds; that the said levy became a lien during the month of February, 1927, on the several tracts of ground as set out in the complaint; that the levy so made against the several tracts of ground was paid in full by the plaintiffs during the year 1927; that the said plaintiffs by their said acts as aforesaid have ratified and confirmed all proceedings going to the formation of the said water district and all proceedings relative to the issuance and sale of the bond issues in the said district.

"That on or about the 4th day of April, 1928, the plaintiff J. D. Lowman paid eighty-four dollars and ninety-six cents ($84.96) on the principal and fifty-nine dollars and forty-seven cents ($59.47) on the interest of the Local Improvement District No. 1 assessment referred to in paragraph 11 of the complaint filed herein; that the said J. D. Lowman by the said act has ratified and confirmed all proceedings going to the formation of the said district and the levying of the said assessment and the issuance of the bond issues herein."

The first question presented is as to the particular steps taken in the organization of the district. Appellants contend that, instead of proceeding under Rem. Comp. Stat., §§ 11579 *et seq.*, the act of 1923, ch. 53, Laws of 1923, p. 172 (Rem. 1927 Sup., § 5143), governs and should have been followed.

The 1923 act is a general act amendatory of prior acts which are also general, and probably applies to elections in water districts after they have been fully organized. Nothing in that act, however, refers to the prior special acts having to do with the formation of water districts. The 1923 act in terms repeals no part of these special acts, and, since they provide for and fix the method of organizing such districts, and are the only statutes authorizing such organization, it would be a far cry to hold that such prior special acts were in any part repealed by implication by the act of 1923. We hold, therefore, that the compliance with §§ 11579, *et seq.*, was sufficient.

The principal question raised is based upon our decision in the case of *Drum v. University Place Water District*, 144 Wash. 585, 258 Pac. 505. The appellants seem to contend that, unless that case be overruled, this case must be reversed, because here, as there, the land owners were given no opportunity to be heard before any board or tribunal as to the boun-

daries of the district and the inclusion of their lands therein. The respondents meet this attack with an invitation to us to re-examine the question, and to overrule the *Drum* case, and also with the plea of estoppel and waiver.

Since we are convinced that the plea of estoppel and waiver is well sustained in fact, and that this is a case calling strongly for the application of the doctrine, we find it now unnecessary to re-examine the questions decided in the *Drum* case.

The findings of fact by the trial court which affect this question, we have already quoted. A study of the evidence amply convinces us that these findings are right as to all of the appellants except Joe Desimone, and, as to him, it very clearly appears that the evidence does not preponderate against such finding. We are therefore bound by the findings as made.

These findings very clearly set forth that the appellants consented to, or otherwise so acted as to encourage, what was done, and afterwards, by standing by without objection, by the payment of assessments in part, and by the use of the water and the like, they have placed themselves in a position where in equity they cannot be heard to complain.

■ The constitutional question raised in the *Drum* case, *supra,* and here, is based on the due process clause of the Fourteenth Amendment which seems always to have been held to be a personal right which may be claimed or waived. Where it is claimed, the party invoking its protection must be able to show, not only that the statute is invalid, but also that he has sustained or is in imminent danger of sustaining some direct injury as a result of its enforcement. The personal right to maintain such an action may be lost by waiver or estoppel or by any conduct which, in equity, is inconsistent with the assertion of such a

right. The general rule in such cases is well stated in the case of *Dunn v. Fort Bend County*, 17 Fed. (2d) 329, where it is said:

"There are other considerations, however, which make it more clear that plaintiffs present no equity whatever for relief. The first of these is that the invocation of the Fourteenth Amendment is a privilege; that the fact that a statute may be obnoxious to the Fourteenth Amendment as to a particular person does not mean at all that it may be so as to another; and that this right to invoke the Fourteenth Amendment, being a personal privilege, may be lost by election, waiver or estoppel.

"The facts in this case, in the light of the decisions, leave no doubt that any person who might at any time have questioned the validity of the district has long since lost that right by estoppel, waiver, or election; the district having existed as a going district for more than 16 years.

"In *Pierce Oil Co. v. Phoenix Refining Co.*, 259 U. S. 125, 42 S. Ct. 440, 66 L. Ed. 855, the court said: 'There is nothing in the nature of such constitutional right as is here asserted to prevent its being waived, or the right to claim it barred, as other rights may be, by deliberate election or by conduct inconsistent with the assertion of such a right.'

"In *Muscatine Lighting Co. v. Muscatine* (D. C.) 256 Fed. 929, the court said: ' "A person may, by his acts or omission to act, waive a right which he may otherwise have under the provisions of a constitution; and where such acts or omissions have intervened, a law will be sustained which otherwise might have been held invalid, if the party making the objection had not by prior acts precluded himself from being heard in opposition." ' See *Pierce v. Somerset Ry.*, 171 U. S. 648, 19 S. Ct. 64, 43 L. Ed. 316; *Eustis v. Bolles*, 150 U. S. 361, 14 S. Ct. 131, 37 L. Ed. 1111; *Shepard v. Barron*, 194 U. S. 553, 24 S. Ct. 737, 48 L. Ed. 1115; *Wight v. Davidson*, 181 U. S. 371, 21 S. Ct. 616, 45 L. Ed. 900; *Lampassas v. Bell*, 180 U. S. 276, 21 S. Ct. 368, 45 L. Ed. 527; *English v. Arizona*, 214 U. S. 359, 29 S. Ct. 658, 53 L. Ed. 1030."

To the same effect are *Louisiana R. & Nav. Co. v. State,* 298 S. W. (Tex.) 462; *Chicago-Sandoval Coal Co. v. Industrial Commission,* 301 Ill. 389, .134 N. E. 158; *Taylor. Coal Co. v. Industrial Commission,* 301 Ill. 381, 134 N. E. 169; *DeNoma v. Murphy,* 28 S. D. 372, 133 N. W. 703; *Ross & Co. v. Road District No. 4,* 27 Fed. (2d) 153.

The judgment of the trial court is therefore affirmed.

MITCHELL, C. J., PARKER, BEALS, MAIN, and MILLARD, JJ., concur.

FULLERTON, J. (dissenting)—I am unable to concur in the foregoing opinion, if it is to be rested on the ground on which it is rested by the majority. It is held, as I understand the holding, that, conceding the water district act under which the proceedings which give rise to the controversy were had is unconstitutional, nevertheless the appellants are estopped by their conduct from asserting the invalidity of levies charged against their lands thereunder, and it is with this that I am unable to agree.

It is almost trite to say that an unconstitutional law is no law; that no rights can be built upon it, and none can be destroyed by it; and that it is not to be taken into consideration for any purpose, but must be ignored entirely. That the water district act is unconstitutional, was held by this court in *Drum v. University Place Water Dist.,* 144 Wash. 585, 258 Pac. 505. This holding left the organization here in question without legal status, except such as it may have as a voluntary association. But that it was in any sense a voluntary association, seems to me worse than idle to assert. The district was organized strictly in pursuance of the water district act. All of the parties involved, the promoters of the scheme as well as the appellants, believed it to be a valid organization under that act,

and none of them ever contended, or even supposed, that it was in any sense a voluntary association. The conduct of the appellants now thought to work an estoppel, was, in a degree, coerced; they believed that the validity of the proceeding was unquestionable, and that opposition thereto was useless.

The doctrine of estoppel has for its purpose the preventing of inconsistent and fraudulent acts resulting in injustice. The branch of the doctrine most nearly applicable to the situation here is what is known as estoppel by conduct. But to be estopped by conduct, the party charged must have been guilty of some inconsistency or fraud which has led another to believe in the existence of a particular state of facts, and which has caused that other to act thereon to his prejudice. Manifestly, no such situation is here presented. The appellants have been guilty of no misrepresentations, either inconsistent or fraudulent. Nor did the parties now adversely affected by the unfortunate situation assume that situation because of any act of the appellants. They acted under the statute, without concern as to the conduct or acts of the appellants. Acting under the assumed validity of the act, they placed large assessments on the property of the appellants, the time of payment of which extends over a period of years. With this, the appellants had nothing to do. They were in no sense the promoters of the enterprise, and to say that by any of the recited acts and conduct, they are estopped from questioning the assessments, seems to me to violate every principle upon which the doctrine of estoppel by conduct is founded.

I did not concur in the opinion in the case of *Drum v. University Place Water District, supra.* It was my opinion then, and is now, that the act there in question violated no provision of the constitution. If the court now would reverse that decision, I would gladly

concur in affirming this one. But to say that, notwithstanding the invalidity of the act, the proceedings had under it are valid, is not to state a principle in which I can concur.

FRENCH, J., dissents.

HOLCOMB, J. (dissenting)—Although I was persuaded to concur in the decision in the *Drum* case, *supra*, I am now firmly convinced that it is radically wrong, contrary to almost universal authority that is applicable in principle, and should be overruled now, when the first opportunity is presented. Upon the facts in that case, the district was organized upon a fundamentally wrong, fraudulent and illegal basis, and should have been upset for that sole reason.

The decision affects so many such districts that the resulting consequences are little short of appalling.

I concur with Judge Fullerton that no correct aplication of the principles of estoppel, by way of acquiescence and encouragement, can affect such a case as this. What the land owners thought was being done, was that a legal, constitutional water district was being organized.

When it is discovered and determined that it is unconstitutional and *void,* it is void as to everybody, participants as well as nonparticipants.

Consequently, I am obliged to dissent.