[No. 25731. Department Two. August 22, 1935.]

C. F. Rood, *Appellant,* v. Water District No. 24 of King County *et al., Respondents.*[1]

*Shorett, Shorett & Taylor,* for appellant.
*Carkeek, McDonald & Harris,* for respondents.

Mitchell, J.—This action was brought April 18, 1935, by C. F. Rood, a property owner in the water district involved, for judgment declaring that all proceedings organizing the district are invalid; that certain warrants issued from December 31, 1929, to April 30, 1932, in the sum of $242.12, in favor of defendant J. A. Walloch, be declared void; that all acts of the commissioners of the district be declared to be nullities, and that the commissioners of the district

[1]Reported in 48 P. (2d) 584.

be permanently restrained from all further proceedings as such commissioners.

The merits of the controversy, as presented here, are shown by the findings of fact, conclusions of law and judgment, which, in full or in substance, are as follows:

Findings of fact:

(1) That the plaintiff is the owner of real estate situated within the boundaries of defendant water district, as follows: [Giving description of plaintiff's property.]

(2) "That the defendant Water District No. 24 of King County, is a purported municipal corporation, organized under the laws of 1913, chapter 161, page 533, and Amendments thereto, under the Laws of 1915, chapter 24, page 55, the same being sections 11579 to 11602 Remington's Compiled Statutes of Washington; that the said Water District was organized on the 21st day of June, 1926; that the boundaries of the said district are described as follows, to-wit: [Here follows description of the Water District, by metes and bounds.]

(3) "That the defendants Carl, Melville and Johansen have been elected and have qualified as commissioners of said purported Water District, and are now attempting to act as such commissioners.

(4) "That commissioners for the said District were elected at the time of the organization of said purported Water District; and commissioners have been re-elected and have qualified at the time and in the manner provided by law each year since the said organization.

(5) "That each year since the said organization, a levy has been made by the said commissioners in the manner provided by law for the purpose of paying indebtedness created for the benefit of the said Water District.

(6) "That a comprehensive scheme of water supply has been adopted by the commissioners of the Water District; and that such comprehensive scheme,

after its adoption by the commissioners, was ratified by a majority vote of the electors of the said District at the election held for the consideration of said proposition.

(7) "That no part of the said comprehensive scheme has been installed in the said District; nor has the District incurred any obligation for said scheme or improvement, except that it did enter into an agreement with the Puget Well Drilling Company to carry out a part of the said comprehensive scheme; that as a result thereof, it has incurred indebtedness; that part of said indebtedness has not been paid.

(8) "That the defendant commissioners are now proposing to amend the comprehensive scheme of water supply and to submit said scheme for ratification to the electors of the District, and, upon its ratification, to obligate the District for the purpose of carrying out the said comprehensive scheme, and for such purpose will call an election and thereby create indebtedness of the district; that the said defendant commissioners are further proposing to make an additional levy upon all the taxable property in the District for the purpose of paying the said indebtedness of the said District herein set forth, and will do so, unless permanently restrained.

(9) [No finding bearing this number.]

(10) "'That the plaintiff has taken no part in said organization proceedings or at all."

Conclusions of law:

(1) "That said district was created and made valid by a validating act of the Legislature Rem. Rev. Statutes Section 11,604 (Laws of 1931, P. 222, Paragraph 1).

(2) "That said validating act (Section 11,604) does not contravene the Constitution of the State of Washington.

"That the plaintiff's action should be dismissed."

The judgment of the superior court is that plaintiff's action be and the same is dismissed. The plaintiff has appealed.

It will be noticed, as stated in the findings, that the organization proceedings occurred in the year 1926 and were had under statutes enacted in 1913, and amendments thereto in 1915, the same being §§ 11579 to 11602, Remington's Compiled Statutes.

After the district was thus attempted to be organized, it was decided in August, 1927, in *Drum v. University Place Water District,* 144 Wash. 585, 258 Pac. 505, quoting the syllabus:

"The water district act, Rem. Comp. Stat., §§ 11579 to 11602, providing for the organization of municipal corporations for the sole purpose of supplying residents of the district with water for domestic purposes, violates the due process clause of the constitution in that it provides for fixing the boundaries of the district and the assessment of benefits without any provision for a hearing on the questions of the property to be included or the benefits."

After that decision, the legislature, Session Laws 1931, chapter 71, p. 222 (Rem. Rev. Stat., § 11604), passed a validating act, the body of which is as follows:

"Section 1. That each and all of the respective areas of land heretofore organized or attempted to be organized or incorporated under chapter 161 of the Laws of 1913, and amendments thereto, are each hereby declared to be and created into duly existing water districts having the respective boundaries set forth in their respective organization proceedings as shown in the files and records of the office of the board of county commissioners of the county in which said organization, or attempted organization is located. The water districts validated or created by this act shall have the same rights, liabilities, duties and obligations as water districts created under chapter 114 of the Laws of 1929, and amendments thereto: *Provided,* That the provisions of this act shall apply only to those water districts which have maintained their organization as water districts since the date of their

attempted incorporation or establishment: *Provided, however,* That nothing herein contained shall be deemed to validate the debts, contracts, bonds or other obligations executed prior to this act, in connection with or in pursuance of such attempted organization, and all taxes or assessments shall hereafter be levied in accordance with the act of 1929, chapter 114, approved March 13, 1929.''

It is contended on behalf of appellant that this act violates the due process clause of the Fourteenth Amendment to the Federal constitution, and that it violates the provisions of Article 2, § 28 of the state constitution, prohibiting the enactment of any special law for the granting of corporate powers or privileges, and of Article 11, § 10 of the state constitution, prohibiting the creating of corporations for municipal purposes, except by general laws.

Appellant's assignments raise the question of the validity of the curative act under these constitutional provisions, and are argued generally.

There is no restriction in our constitution on the power of the *legislature* to create municipalities, other than the requirement that it shall be done by general, and not by special, law. The failure of the water district law, held to be invalid in the *Drum* case, was not that it was a special law, nor because the legislature did not have power to create a corporation for municipal purposes and define its boundaries, but because powers were attempted to be delegated to petitioners to fix boundaries and to county commissioners to call elections to approve the same ''without any provision for a hearing on the question of the property to be included, or the benefits.''

The theory of validating acts, such as this one, is that the legislature itself directly, and not by way of purported delegation of power to some other person, board or tribunal, creates the corporation for munici-

pal purposes out of areas of land theretofore organized or attempted to be organized or incorporated, under laws such as chapter 161, Laws of 1913, p. 533, and amendments, such areas having specific boundaries as set forth in their respective organization proceedings, as shown in the public records of such proceedings; provided, however, as the validating act says:

"The provisions of this act shall apply only to those water districts which have maintained their organization as water districts since the date of their attempted incorporation or establishment;"

which conditions, the trial court finds, are existent in the present case.

A statute of the territorial legislature of 1888, purporting to authorize the creation of municipal corporations by a judicial court, upon petition of a majority of the residents within the territory to be incorporated, was held to be unconstitutional, in *Territory ex rel. Kelly v. Stewart,* 1 Wash. 98, 23 Pac. 405, 8 L. R. A. 106, because it attempted to delegate legislative functions to a court. In *Denver v. Spokane Falls,* 7 Wash. 226, 34 Pac. 926, it was held (syllabus):

"Sec. 6 (Laws 1890, p. 135) of the act providing for the organization, classification, incorporation and government of municipal corporations, which authorizes the re-incorporation of void municipal corporations, is null and void for the reason that it violates the constitutional inhibition against creating municipal corporations by special laws."

After that decision, the legislature (Session Laws of 1893, chapter 8, p. 183) enacted a law, as follows:

"Section 1. The incorporation of all cities and towns in this state heretofore had or attempted under sections one, two and three of an act entitled 'An Act providing for the organization, classification, incorporation and government of municipal corporations, and declaring an emergency,' approved March 24, 1890,

and the re-incorporation of all cities and towns in this state heretofore had or attempted under sections one, four and five of said act, under which attempted incorporation or re-incorporation an organized government has been maintained since the date thereof, is hereby for all purposes declared legal and valid, and such cities and towns are hereby declared duly incorporated. And all contracts and obligations heretofore made, entered into or incurred by any such city or town so incorporated or re-incorporated are hereby declared legal and valid and full of force and effect.''

Thereafter, the case of *Pullman v. Hungate,* 8 Wash. 519, 36 Pac. 483, arose. The city of Pullman had been incorporated under the act of February 2, 1888, and made an attempt to re-incorporate under the act of March 27, 1890, and it was contended that the city was not a legal or municipal corporation, notwithstanding the curative act of 1893. The contention that the city was not a legal municipal corporation was made upon the authority of *Territory ex rel. Kelly v. Stewart,* 1 Wash. 98, 23 Pac. 405, 8 L. R. A. 106, and *Denver v. Spokane Falls,* 7 Wash. 226, 34 Pac. 926, and the superior court held with that contention. Upon reversing the judgment, this court said:

''If the act under consideration had stopped with the announcement of its intention to legalize such towns as had been so incorporated or re-incorporated, it would have been ineffectual for the purpose for which its aid is invoked by appellant here. *But it did not stop there; it went further, and provided that if those bodies which had so attempted to incorporate or re-incorporate had, at the date of the passage of the act, an organized government which had been maintained since the date of such attempted incorporation, such organized bodies should thereafter be legal incorporations. In other words, the legislature did not seek specifically to legalize the incorporation or attempted incorporation which, being void, was, perhaps, incapable of legislation, but rather sought to legislate as to constituted bodies which, in fact, existed and were*

*maintaining, under claim of authority so to do, the character of municipal corporations. In our opinion it was within the power of the legislature so to deal with these de facto bodies regardless of the question as to the rightfulness of their assumption of the powers under which they were purporting to act."* (Italics ours.)

Then, answering the argument that such a validating act was special legislation, after saying that, in the absence of any constitutional inhibition as to special legislation, it would be proper for the legislature to take notice of the fact that a body of persons in a given locality were assuming to exercise certain powers, it was said:

*"Such being the case, we see no reason why the legislature could not take notice of the fact that there was a class of such bodies, and enact laws in relation thereto without infringing the provisions of the constitution against special legislation. The fact that the inhabitants of a certain locality, by their own action, have assumed to act in a particular capacity distinguished from that of the people at large, so separates them as a class from the rest of the people of the state that the legislature may properly deal therewith in a different manner than with the rest of the people without its action being special legislation. It is true that there can hardly be such a thing as a corporation de facto in a strict sense, but it is equally true that there may well be such a segregation of a body of people in a certain locality, by their action and assumption of power, that they do in fact bear a different relation to the government from that of the people who have not so segregated themselves."* (Italics ours.)

The holding in the *Hungate* case was approved and followed in subsequent cases. *Abernethy v. Medical Lake*, 9 Wash. 112, 37 Pac. 306; *State ex rel. Bradley v. Berry*, 13 Wash. 708, 42 Pac. 622; *State ex rel. Hemen v. Ballard*, 16 Wash. 418, 47 Pac. 970.

Another curative act of the state may be no-

ticed. In *State ex rel. Bussell v. Abraham,* 61 Wash. 601, 112 Pac. 671, an act of the legislature, passed at the special session of 1909, found at p. 8 of those laws, intended to provide for the construction and maintenance of commercial waterways, was held to be invalid, for the lack of proper provisions for the making of assessments and equalizing them, and for lack of provision for notice to property owners giving opportunity to be heard with reference to assessments and equalization. Upon the decision to that effect, the legislature of 1911, then in session, passed an emergency act, Laws of 1911, chapter 10, p. 10, validating the organization and creation of commercial waterways, the act being similar in all essentials to the act of 1893 legalizing the incorporation or re-incorporation of cities and towns referred to and discussed herein, and also like the validating act involved in the present case. Thereupon, on a rehearing in the case (*State ex rel. Bussell v. Abraham,* 64 Wash. 621, 117 Pac. 501), in overruling the first decision, and in holding the curative act effective, it was said, among other things:

"The legislature has power to enact a curative or validating statute retroactive in its application, as long as it does not thereby impair the obligation of contract or otherwise violate any constitutional inhibition. There can be no question but that the legislature, if it saw fit, might have originally authorized the creation of a commercial waterway district, by the exact procedure that has been adopted in this particular instance. The 1911 statutes are sufficiently potent to accomplish their evident purpose. They expressly cure and validate defective districts, begun or attempted to be organized under the act of 1909. Chapter 10, p. 10, Laws 1911, is manifestly modeled after the curative act (Laws 1893, p. 183) relating to cities and towns, which this court held to be constitutional and effective, in *Pullman v. Hungate,* 8 Wash. 519, 36

Pac. 483. See, also, *State ex rel. Hamen v. Ballard,* 16 Wash 418, 47 Pac. 970; *Lewis County v. Gordon,* 20 Wash. 80, 54 Pac. 779; *Spring Water Co. v. Monroe,* 55 Wash. 195, 104 Pac. 202; *Stembel v. Bell,* 161 Ind. 323, 68 N. E. 589; *Muse v. Lexington,* 110 Tenn. 655, 76 S. W. 481; *McMickle v. Hardin,* 25 Tex. Civ. App. 222, 61 S. W. 322; *Cole v. Dorr,* 80 Kan. 251, 101 Pac. 1016, 22 L. R. A. (N. S.) 534.''

Similar validating acts and decisions of other jurisdictions cited by counsel need not be analyzed. Our decisions on such acts of our legislature are ample authority for sustaining the validating act involved in this case. The facts found by the trial court measure up fully to the conditions necessary to make the act effective and applicable by which, in legal effect, the legislature itself creates the corporation for municipal purposes. There is no substance in the contention that the act is special legislation, or that it violates either provision of the state constitution cited by the appellant; nor can it be said to violate the due process clause of the Fourteenth Amendment to the Federal constitution. The state, by its legislature and within its legislative power by its act of validation, creates the corporation for municipal purposes, without in any way violating the due process clause of the Federal constitution.

Affirmed.

MAIN, HOLCOMB, STEINERT, and BLAKE, JJ., concur.