[No. 27804. Department Two. May 10, 1940.]

EMMA McKENZIE, *Respondent,* v. MUKILTEO WATER DISTRICT *et al., Appellants.*[1]

[1]Reported in 102 P. (2d) 251.

104

*Wm. A. Johnson* and *Jas. W. Dootson,* for appellants.

*A. E. Jonson* and *Charles R. Denney,* for respondent.

JEFFERS, J.—Plaintiff, Emma McKenzie, instituted this action against Mukilteo Water District and Sylvester Stumfall, as treasurer of Snohomish county, to restrain defendants from in any manner attempting to collect a local improvement assessment in local improvement district No. 8, created in and by the Mukilteo water district, and further asked to have her land declared free and clear from the lien of such assessment and to have her land stricken from the assessment roll.

After a hearing, the court, on July 22, 1939, entered

judgment awarding to plaintiff the relief prayed for. A motion for new trial was made by defendants, and denied. This appeal by defendants followed.

In 1920, the residents of a large tract of land south and southwest of Everett, desiring to obtain water for domestic purposes, proceeded to organize a water district, under the provisions of Laws of 1913, chapter 161, p. 533. Pursuant to the provisions of chapter 161, the Mukilteo water district was formed, and commissioners elected, in 1920, by practically the unanimous vote of the people residing within the proposed boundaries of the district.

After the creation of the district, the commissioners elected formulated a comprehensive plan for the installation of a water system. This plan was, at a special election held March 23, 1922, submitted to the voters of the district and carried by a large majority. The scheme provided for a supply system and distribution systems, as and when they became necessary. The water for the system was to be purchased from the city of Everett and conveyed to certain reservoirs in the district. Payment for this supply system was to be made by the district as a whole, with funds provided from a general bond issue, payable by direct taxes upon the property therein. Distribution systems, as distinguished from the supply system, were to be paid for as local improvements, in districts to be created, as and when settlement of the territory required their creation.

The supply system was immediately installed, and within two years the district had expended about seventy thousand dollars. Local improvement districts have been formed, and distribution systems have been constructed, in accordance with the plan approved in 1922, and the district has been supplying water to the various local improvement districts at

all times since 1922, up to the present time, with no complaint being made, up to the time this action was instituted.

It is conceded that all of the proceedings had relative to the creation and operation of appellant district were in conformity with Laws of 1913, chapter 161, with the exception of the comprehensive plan, which it is contended was not legally sufficient.

In 1927, chapter 161, Laws of 1913, was, in the case of *Drum v. University Place Water Dist.*, 144 Wash. 585, 258 Pac. 505, held to be unconstitutional, for the reason that it violated the due process clause of the fourteenth amendment to the Federal constitution, in that the act made no provision for a hearing on the question of the property to be included within the limits of the proposed district, and no provision for a hearing on the question of benefits.

The effect of this decision was to leave the appellant district, and other water districts similarly situated, without any legal existence. Undoubtedly having in mind the situation in which certain water districts were left by the decision in the *Drum* case, the legislature, at its next session (1929) passed chapter 114, p. 218, the title of which is as follows:

"An Act creating and validating the organization, establishment and existence of water districts heretofore organized or established, or attempted to be organized or established, under Chapter 161 of the Laws of 1913 and amendments thereto; validating and confirming all bonds, obligations, contracts, assessments, levies and all other acts, proceedings and things heretofore executed, issued or done by such districts or their officers; . . . ."

continuing that the act was for the purpose of the establishment of water districts and the acquisition and construction of a water supply for all uses and

purposes other than irrigation, and declaring an emergency.

Chapter 114 was substantially a reenactment of chapter 161, Laws of 1913, and was undoubtedly intended to provide a complete code for the organization and operation of water districts. However, the 1929 act corrected the evil in the 1913 act, pointed out in the *Drum* case, by providing for hearings before the county commissioners relative to the question of the property to be included within the territorial limits of the proposed corporation, and the question of benefits.

The 1929 act contained three additional sections, namely, §§ 27, 28, and 29, pp. 244, 245. Section 27 provided that "any water district now organized under any previous act may use this act as if organized under this act." Section 28 provided:

"That each and all of the respective areas of land heretofore attempted to be organized into water districts under the provisions of the statutes referred to in the title hereof relating to such organization of water districts, are each hereby validated and declared to be duly existing water districts having the respective boundaries set forth in their respective organization proceedings as shown by the files in the office of the board of county commissioners of the county in question."

Section 29 provided in part:

"All debts, contracts and obligations heretofore made or incurred by or in favor of any such water district, and all bonds or other obligations executed by such districts in connection with or in pursuance of such attempted organization, and any and all assessments or levies and all other things and proceedings done or taken by such water districts or by their respective officers acting under such attempted organization, are hereby declared legal and valid and of full force and effect. . . ."

Sections 27, 28, and 29 were vetoed by the governor, as well as § 11, p. 230, which provided for the issuance of general water bonds.

It is apparent that the result of the veto of §§ 27, 28, and 29 was to deny a large part of the relief sought to be accomplished by the act of 1929, in that it left without legal existence many districts organized under the 1913 act.

In 1931, the legislature passed chapter 71, p. 222, which act is entitled:

"An Act creating and ratifying the organization, establishment and existence of water districts heretofore organized or established, or attempted to be organized or established."

In view of the fact that we believe a proper determination of this case rests upon the interpretation of chapter 71, Laws of 1931, we will set out this act in full:

"Section 1. That each and all of the respective areas of land heretofore organized or attempted to be organized or incorporated under chapter 161 of the Laws of 1913, and amendments thereto, are each hereby declared to be and created into duly existing water districts having the respective boundaries set forth in their respective organization proceedings as shown in the files and records of the office of the board of county commissioners of the county in which said organization, or attempted organization is located. The water districts validated or created by this act shall have the same rights, liabilities, duties and obligations as water districts created under chapter 114 of the Laws of 1929, and amendments thereto: *Provided,* That the provisions of this act shall apply only to those water districts which have maintained their organization as water districts since the date of their attempted incorporation or establishment: *Provided, however,* That nothing herein contained shall be deemed to validate the debts, contracts, bonds or other obligations executed prior to this act in connection with or

in pursuance of such attempted organization, and all taxes or assessments shall hereafter be levied in accordance with the act of 1929, chapter 114, approved March 13, 1929."

It is the contention of appellants that chapter 71, *supra,* operated to validate the organization of the water district as of the date of its organization in 1921, and that, consequently, the adoption of the comprehensive plan in 1922 was validated in all respects; that the adoption of the comprehensive scheme was not a condition precedent to the authority of the water district to create a local improvement district; that the statute expressly provided that, unless written objections were made to an assessment roll, the owner could not object thereafter, since a forum and a procedure were established by law; and finally, that by the acts of respondent in paying the special water tax for fifteen years or more, she has waived her right to object and is estopped from making this objection.

On the other hand, it is the contention of respondent that the water district had no legal existence until 1931, and that the adoption of a comprehensive scheme and plan after the effective date of the act of 1931 is an indispensable prerequisite to the formation of any local improvement district; that respondent has not lost her right to complain because of her failure to object to the confirmation of the assessment roll, since her attack involves a question of power and jurisdiction on the part of the water district to form a local improvement district.

It is stipulated that local improvement district No. 8 was created according to law, and also that at no time after the enactment of the 1931 act was the original comprehensive scheme, or any other, submitted to the voters of such water district.

In view of the contentions made relative to the effect

of chapter 71, Laws of 1931, upon water districts formed, or attempted to be formed, under the 1913 act, and as a basis for the conclusion hereinafter reached, it may be well to again advert to some basic principles relative to statutory construction.

■ The fundamental rule is to ascertain and give effect to the intention of the legislature. 25 R. C. L. 960, § 216; 59 C. J. 948, § 568; *Featherstone v. Dessert,* 173 Wash. 264, 22 P. (2d) 1050; *Robb v. Tacoma,* 175 Wash. 580, 28 P. (2d) 327, 91 A. L. R. 1010. Certain other rules of construction, recognized as aids in determining legislative intent, will be referred to as we proceed.

The intent of the legislature to make chapter 114, Laws of 1929, retroactive, is clearly apparent from a reading of that act. Section 29 provides:

"All debts, contracts and obligations heretofore made or incurred by or in favor of any such water district, and all bonds or other obligations executed by such districts in connection with or in pursuance of such attempted organization, and any and all assessments or levies and all other things and proceedings done or taken by such water districts or by their respective officers acting under such attempted organization, are hereby declared legal and valid and of full force and effect. . . ."

Under the act of 1929, and particularly under the provisions of § 29 thereof, it could not well be contended that the comprehensive scheme or plan prepared by the commissioners of appellant district, and ratified by the voters within that district in 1922, was not in full force and effect. However, as we have said, this section was vetoed by the governor. Having in mind, then, what the legislature clearly attempted to do in 1929, let us examine chapter 71, Laws of 1931.

The effect of the veto of the sections of the 1929 act was to leave that act merely providing for the

creation and organization of water districts, and took away from it the validating and ratifying effect of those districts organized under chapter 161, Laws of 1913, so that, if life was to be given to districts such as appellant, legislation was still necessary to effect that purpose.

"Whatever a legislature may originally authorize, it can, if the constitution under which it exists interposes no obstacle, subsequently ratify; and such ratification is equivalent to an original grant of power, operative by relation, as of the date of the thing ratified. This, according to all the authorities, is the theory and effect of a ratifying act." *Los Angeles City Water Co. v. Los Angeles,* 88 Fed. 720, 742.

To the same effect is 2 Cooley's Constitutional Limitations (8th ed.), 790. See, also, *Grenada County Supervisors v. Brogden,* 112 U. S. 261, 28 L. Ed. 704, 5 S. Ct. 125; *Wright v. Johnson,* 108 Va. 855, 62 S. E. 948; *Edwards v. Nash County Board of Commissioners,* 183 N. C. 58, 110 S. E. 600.

The principle above announced has been recognized and followed by this court in the case of *State ex rel. Bussell v. Abraham,* 64 Wash. 621, 117 Pac. 501, wherein it is stated:

"The legislature has power to enact a curative or validating statute retroactive in its application, as long as it does not thereby impair the obligation of contract or otherwise violate any constitutional inhibition."

The validating act in the *Bussell* case, *supra,* is similar to the one in the instant case.

We are of the opinion there can be no doubt but that chapter 71, Laws of 1931, did ratify, validate and confirm the existence of appellant water district as of the date of its organization.

But the question still remains: Did this act validate and ratify the act of the commissioners of appellant

district, in so far as the comprehensive scheme or plan prepared by them is concerned?

██ Statutes must be construed as a whole, and, if possible, effect must be given to each word, phrase, clause and sentence of the act. 25 R. C. L. 1004, § 246; *Murray v. Department of Labor & Industries,* 151 Wash. 95, 275 Pac. 66. In determining the intent of an act, resort may be had to the title. *Hastings v. Bremerton,* 159 Wash. 621, 294 Pac. 551; *State ex rel. Seymour v. Superior Court,* 168 Wash. 361, 12 P. (2d) 394. While respondent contends that all chapter 71 did was to *create* the appellant district into a valid district as of the effective date of the act, we are convinced that, when the history of this legislation is kept in mind, it is apparent from the title of the act that something more was intended than to create water districts, for if that was the only purpose, why did the legislature use the further language in the title:

". . . and ratifying the organization, establishment and existence of water districts heretofore organized or established, or attempted to be organized or established."

Webster's New International Dictionary (2d ed.) defines the word "ratify" as follows: "To approve and sanction, esp. formally, as the act of an agent or servant; to make valid or legally operative; to confirm." In 3 Words & Phrases (4th series), 305, we find the following definition:

" 'Ratification' is equivalent to a previous authorization and relates back to time when act ratified was done, except where intervening rights of third persons are concerned."

See, also, *Petray v. First Nat. Bank,* 92 Cal. App. 86, 267 Pac. 711; *Grenada County Supervisors v. Brogden, supra.*

The following language, found in the body of the

act, "The water districts validated or created by this act . . .," is convincing of the fact that more was intended than to merely create. We think it is also apparent that the legislature intended chapter 71 to be retroactive. This conclusion is based upon a consideration of the first proviso, which reads:

*"Provided,* That the provisions of this act shall apply only to those water districts which have maintained their organization as water districts since the date of their attempted incorporation or establishment."

Having in mind that a local improvement district is a part of a water district, and that, as a basis for any expenditure by a water district and the creation of a local improvement district, there must be a comprehensive scheme or plan, and also having in mind that, if the 1931 act did no more than create water districts, the act would be practically a nullity, as districts could, without that act, be created under the 1929 act, we are of the opinion it is a reasonable interpretation to be placed on the 1931 act to say that the legislature not only intended to validate the formation of this district, as of the date of its organization, but also to validate and ratify such acts, not excepted by the act, as were necessary to be done in the organization, establishment, and existence of such water districts. We are further of the opinion that the adoption of a comprehensive scheme and plan comes within those acts necessary to the establishment and existence of such water districts.

■ ■ There is another part of chapter 71 which, when considered in the light of a well recognized rule of statutory construction, lends support to the conclusion reached in the preceding paragraph. We refer to the second proviso, which reads:

*"Provided, however,* That nothing herein contained shall be deemed to validate the debts, contracts, bonds or other obligations executed prior to this act in con-

nection with or in pursuance of such attempted organization, and all taxes or assessments shall hereafter be levied in accordance with the act of 1929, chapter 114, approved March 13, 1929."

This proviso immediately follows the other proviso herein referred to.

"The appropriate office of the proviso is to restrain or modify the enacting clause, and not to enlarge it or confer a power; but where from the language employed it is apparent that the legislature intended a more comprehensive meaning, it must be construed to enlarge the scope of the act, or to assume the function of an independent enactment." 59 C. J. 1090, § 641.

"Most frequently perhaps a proviso is intended to restrain the preceding provisions and to except something that would otherwise have been within the act. Where this is the purpose of a proviso, the general language of the main provisions is to be construed as covering the matters contained in the proviso had those provisions stood alone." 25 R. C. L. 987, § 233.

"It has not been an unfrequent mode of legislation to frame an act with general language in the enacting clause, and to restrict its operation by a proviso. . . . Provisos and exceptions are similar; intended to restrain the enacting clause; to except something which would otherwise be within it, or in some manner to modify it. . . . The exception of a particular thing from the operation of the general words of a statute shows that in the opinion of the law-maker the thing excepted would be within the general words had not the exception been made." 2 Lewis' Sutherland Statutory Construction (2d ed.), 670, § 351.

See, also, Black on Interpretation of Laws (2d ed.), 430, § 129.

Having in mind the foregoing rules relative to statutory construction, and having in mind the provisions of the 1929 act, vetoed by the governor, we think it reasonable to assume that the legislature intended, by inserting the proviso in chapter 71, Laws of 1931, to

exclude from the retroactive operation of the statute the designated items, namely, debts, bonds, contracts, and other obligations; and by necessary inference, all other acts of the validated districts were intended to be ratified and validated.

Chapter 71, Laws of 1931, was before this court for consideration in the case of *Rood v. Water Dist. No. 24*, 183 Wash. 258, 48 P. (2d) 584. Counsel for both appellants and respondent discuss this case in their briefs and draw different conclusions therefrom. In order that the purpose of the action be shown and the effect of the decision noted, we quote the first paragraph of the opinion:

"This action was brought April 18, 1935, by C. F. Rood, a property owner in the water district involved, for judgment declaring that all proceedings organizing the district are invalid; that certain warrants issued from December 31, 1929, to April 30, 1932, in the sum of $242.12, in favor of defendant J. A. Walloch, be declared void; that all acts of the commissioners of the district be declared to be nullities, and that the commissioners of the district be permanently restrained from all further proceedings as such commissioners."

The trial court entered judgment dismissing the action, and the judgment was by this court affirmed. While a reading of the case shows that the only thing considered by this court was the constitutionality of the act, the effect of the decision was to hold the warrants valid, as well as the acts of the commissioners of the district. In the cited case, the district was organized in 1926, under chapter 161, Laws of 1913. It further appears in the cited case that a comprehensive scheme and plan had been adopted by the commissioners and ratified by the electors of the district prior to 1931. While, as we have said, this court, in the *Rood* case, did not discuss the question here raised, it was certainly before this court, and it is difficult to

see how the decision could have been reached without considering the question here raised, namely, whether or not the act of 1931 ratified and validated the comprehensive scheme and plan adopted by the commissioners and ratified by the people, which was done prior to the 1931 act, the same as in the instant case.

We are also of the opinion respondent has waived her right to attack the organization and operation of the water district and is estopped from questioning the validity of the assessment levied against her. It is respondent's contention that she did not know that her land was located within the Mukilteo water district, and for that reason she has not waived her right to contest the validity of the assessment.

It is undisputed that appellant district was formed, and commissioners elected, in 1920, and a comprehensive scheme and plan ratified by the electors of the district in 1922, and that the district has been operating and furnishing water continuously since shortly after the ratification of the plan. It is also undisputed that respondent has paid taxes on the land continuously since 1918, except for the past three years, for which period the taxes are delinquent. Respondent resides in Seattle, and has never lived on the land, and has never obtained water from the district. Respondent testified that she did not know her land was located within appellant district, and further testified that she had never read on her tax statements that a part of the tax was based on a levy for the water district. Respondent claims, in part at least, that she relied upon the statement of a Mr. Niccolin that she was not within the district.

However, from an examination of this record, we are impressed with the fact that respondent must have known of the district. It is undisputed that, upon the back of respondent's tax statements for the year 1922,

and from 1930 to 1936, inclusive, appears the following:. "Mukilteo Water District, 9.6," the figures varying with the different years. In 1937 and 1938, a separate sheet accompanied the tax statement sent respondent, and on this sheet was the statement that a levy was made for "Mukilteo Water District." Respondent paid these taxes each year without protest. It should be kept in mind that respondent is not contesting the regularity of the organization of local improvement district No. 8, but her attack is predicated upon the proposition that the district was without power to organize the improvement district, because there was no valid comprehensive plan under which such improvement district could be organized.

While a somewhat different factual situation is presented in the case of *Desimone v. Shields,* 152 Wash. 353, 277 Pac. 829, we think the cited case is authority for our conclusion that respondent has waived her right to object to the comprehensive scheme and plan, and is estopped from questioning the assessment. See, also, *Chase v. Carney,* 199 Wash. 99, 90 P. (2d) 286.

Respondent cites and relies on the case of *Vincent v. Shields,* 158 Wash. 262, 290 Pac. 819, which involved the same water district as did the *Desimone* case, *supra.* It was held in the cited case that no estoppel existed. We are satisfied that a reading of the cited case will show the difference in the factual situation therein from that disclosed in the *Desimone* case and the instant case. In the cited case, so far as the record shows, the only knowledge the respondent had of the assessment which she was questioning was a notation on her general tax statement for one year (1926), as follows: "W. D. 20." There was nothing to indicate that the respondent had any knowledge whatever of the purpose for which the payment was included or paid.

While, because of our conclusion that the com-

prehensive scheme and plan adopted in 1922 was validated and ratified by the 1931 act, it is probably unnecessary to pass upon the further contention of appellants that respondent, by reason of the provisions of §§ 12 and 14, chapter 114, Laws of 1929, pp. 231, 235 (Rem. Rev. Stat., §§ 11590 and 11592 [P. C. §§ 7249-22, 7249-24]), is barred from bringing this action, yet we feel that the question is deserving of our attention.

Section 12, *supra,* provides the method by which local improvement districts shall be created, and provision is made therein for hearings on the matter of the creation of local improvement districts, and for hearings on assessment rolls. Section 14, *supra,* provides:

"Whenever any assessment roll for local improvements shall have been confirmed by the water district commission of such water district as herein provided, the regularity, validity and correctness of the proceedings relating to such improvement, and to the assessment therefor, including the action of the water district commission upon such assessment roll and the confirmation thereof, shall be conclusive in all things upon all parties, and cannot in any manner be contested or questioned in any proceeding whatsoever by any person not filing written objections to such roll in the manner and within the time provided in this act, and not appealing from the action of the water district commission in confirming such assessment roll in the manner and within the time in this act provided. No proceedings of any kind shall be commenced or prosecuted for the purpose of defeating or contesting any such assessment, or the sale of any property to pay such assessment, or any certificate of delinquency issued therefor, or the foreclosure of any lien issued therefor: *Provided,* That this section shall not be construed as prohibiting the bringing of injunction proceedings to prevent the sale of any real estate upon the grounds (1) that the property about to be sold does not appear upon the assessment roll, or (2) that said assessment had been paid."

It is admitted that all things required by the statute have been done by the district, and it is also admitted that respondent did not file written objections to the assessment roll or appeal from the action of the district confirming the assessment roll. In the absence of a lack of power or jurisdiction on the part of the district, we are clearly of the opinion that §§ 12 and 14 provide an exclusive forum and procedure for questioning the validity of a local improvement assessment. Respondent having failed to establish lack of power to organize the local improvement district, and this proceeding not being based upon either subd. (1) or (2) of the proviso, respondent is, by the statute, barred from prosecuting this action.

Respondent also makes some contention that the comprehensive scheme and plan was not legally sufficient. While the trial court held the comprehensive scheme and plan adopted in 1922 was not validated and ratified by the 1931 act, the court did hold that the plan and scheme so adopted was sufficient, in so far as form was concerned, and we also are satisfied that the plan and scheme, as adopted and subsequently validated and ratified by the 1931 act, was sufficient to meet the statutory requirements.

The judgment of the trial court is reversed, with instructions to dismiss the action.

BLAKE, C. J., BEALS, and STEINERT, JJ., concur.